[Crim. No. 3251. First Dist., Div. Two. Mar. 13, 1957.]

THE PEOPLE, Respondent, v. JAMES KEARNS,
Appellant.

Nathan Cohn and Lawrence Shostak for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and William M. Bennett, Deputy Attorney General, for Respondent.

COMSTOCK, J. pro tem.*—Defendant was charged in an information with robbery in two counts, committed by means of force and by putting in fear, while armed with a deadly weapon, a gun. The information also alleged that the defendant had previously been convicted of two felonies, to wit, assault with intent to commit robbery, and robbery. Defendant pleaded not guilty to each charge of robbery and admitted having suffered the two prior convictions. Trial was had before a jury which returned verdicts of guilty as to each count and found each offense to be robbery in the first degree. It also found each charge of being armed with a deadly weapon to be true. A motion by defendant for a new trial was denied. Defendant was sentenced to be punished by imprisonment in the state prison for the term prescribed by law, as to each count, the sentences to run concurrently. This appeal by defendant is from the judgment and sentence of conviction and from the order denying his motion for a new trial.

The following points are urged by the defendant as grounds for reversal: (I) that the trial judge erred to the prejudice of the defendant by admitting evidence regarding possession of guns by the defendant prior to the commission of the crimes alleged; (II) that prejudicial error was committed by the court's admitting evidence of prior robberies by the defendant; (III) that the deputy district attorney was guilty of misconduct to the prejudice of the defendant by bringing to the attention of the jury, in argument and in the questioning of witnesses, a gun in a package which had been in the possession of the Police Department of San Francisco continuously from a date prior to the commission of the crimes charged to a date subsequent thereto and could not have been the weapon used in the commission of the crimes; and, further, by having, in company of a police officer, visited a defense witness and frightened him into being hesitant and evasive in his testimony; (IV) that the trial judge erred and prejudiced the defendant by permitting cross-examination of the defendant beyond the scope of the direct examination; and (V) that prejudicial error occurred when the trial judge denied the defendant a new trial based upon newly discovered evidence. We have reached the conclusion that none of these grounds of appeal has merit.

With respect to count one, the essential facts are as follows:

---

*Assigned by Chairman of Judicial Council.

Shortly after midnight of October 13, 1955, John M. Johnson who, with a partner, owned and operated a grocery store at 667 Bush Street in the city and county of San Francisco, observed an automobile stop in front of the store. He noticed defendant sitting on the right hand side of the car. Defendant got out of the car, entered the store, shopped around and brought a few items to the counter. He was wearing a long, faded yellow trench coat which was all buttoned up at the neck. Johnson was suspicious because of the way the coat, which looked like a raincoat, was so completely buttoned up "on such a nice evening" so he "kept taking a good look at him." He particularly noticed defendant's eyes; they seemed to him to be different from any he had ever seen. Defendant was bareheaded and his hair was mussed and unruly. After shopping around, defendant came to the check stand, ordered two cartons of cigarettes, said he had forgotten something and went back for a quart of milk. Johnson rang up the sale on the cash register and put defendant's money on the register, whereupon, defendant reached through the pocket of his coat and stuck what appeared to Johnson to be a blue steel revolver, about a .38 caliber, out through the front of his coat, saying, "This is it; this is a stick up. Put the money in a bag." The contents of the cash register amounting to something in excess of $300 were put in a bag by Johnson and handed to the defendant who ordered Johnson to "keep his nose pointing down at the cash register just like he was and he would be okay." Defendant left; Johnson heard a car pull away. Johnson identified a photograph of defendant made on September 20, 1955, and also identified him in a police line-up five or six days after the robbery and in open court at the trial. He was positive in his identification.

The following facts appear as to the robbery charged in the second count: On October 17, 1955, at about 7:45 p. m., defendant entered the grocery store of Albert Citti at 2260 Van Ness Avenue in San Francisco. Citti described defendant's dress as "a tan coat that could have been used as a raincoat, that was buttoned up to his neck." He was bareheaded and had "unruly hair; wasn't combed back slick or anything at the time." Defendant asked Citti for a fifth of gin and was told that he had only pints. Defendant said that would do. Citti placed a pint bottle of gin on the counter near the cash register and defendant pulled out a gun, menacing Citti with it, and ordered, "Open it up and give me the money." Citti gave him the money. Defendant ordered

him to, "Put it in the paper bag." Citti obeyed. Defendant picked up the bag and the bottle, told Citti, "Turn your eyes toward the floor" and departed. The amount of money taken was about $110. Citti testified that he was not at all familiar with guns, but that the weapon used looked to him like a Luger, "sort of a dark gun, brown in color." He said he would not really know whether it was an automatic type gun but defendant did "clip it back" and said, "Hurry it up," so Citti "hurried up." Citti identified defendant from a series of photographs shown him by the police and also identified him later in a police line-up and in court. He had no doubt whatever of the identity of defendant.

Appellant says the court erred in permitting reference by the deputy district attorney to a Smith and Wesson .38 caliber revolver taken from defendant by the police on September 20, 1955, and conceded to have been in their possession continuously from that date through the time of trial. Of course, this could not have been one of the weapons used in the robberies. Defendant testified he had no gun on either October 13th or 17th. It therefore was competent for the prosecution to attempt to show by cross-examination or other competent testimony that he had had possession of a weapon similar to either of the guns used in the robberies at a previous date. It is true that both the deputy district attorney and the attorney for defendant knew of the gun in the possession of the police. If this had been the only gun of which the prosecution had any knowledge or which it expected to show defendant had previous to the robberies, its good faith in bringing up the subject would have been subject to question. But the gun in the possession of the police was a snub-nosed or short-barreled Smith and Wesson, described by the defendant as "a stub-nosed Colt and Wesson, I believe; I'm not sure. It was a stub-nosed revolver . . . Well, the barrel is short, yes." The prosecution produced a witness, Patricia Adler, a friend of defendant, who testified to the defendant's having shown her a revolver about 8 or 9 inches long during the month of September, 1955. It was thus necessary, both in fairness to the defendant and in the interest of accuracy, to distinguish the short-barreled gun from the gun which the prosecution sought to prove was similar to one of those used in the robberies. This the deputy district attorney did in an eminently fair manner. He first asked the defendant if he had in his possession a .38, possibly a .45 caliber revolver prior to the dates of the robberies. Following argument out of the

presence of the jury on defendant's objection to this question, the court permitted the question, but limited the examination to an attempt to show defendant's possession of a gun similar to one of those testified to in the case. As a proper precaution against the jury being misled or prejudiced, the court gave them the following instruction: "Well, now, ladies and gentlemen, I'm going to permit the District Attorney to ask this series of questions on the theory that—the reason I'm explaining it to you is that it will be up to you to decide. I take it that the District Attorney is going to attempt to prove that this man had in his possession at sometime a gun that was similar to one of the guns that has been testified to here, and I want you to listen to the testimony with the understanding that this has nothing to do with this defendant's general character, or anything like that, and it will be up to you to decide from the evidence whether, first, he did have a gun in his possession prior, and, secondly, if it was in any way similar to either of the two guns that were testified that were used in the two robberies.

"Now, I'm permitting it on that very narrow ground, and for a very narrow reason, so I want you to keep those things in mind as you listen, and under our methods of procedure, it is necessary for the People, who have to ask him the questions, and presumably will produce their own evidence in an attempt to prove he did have such a gun, but they must ask him first to lay a foundation, as we call it, so, it is a difficult situation, and I want you to approach it thoughtfully and with this narrow issue in mind." The question was then read back by the reporter and defendant answered, "I had a .38." Asked if he had more than one .38, he answered, "No." He was then asked to describe the .38 that he had and did so as above set out. The record then shows the following: "Mr. Hanley: Do you have the exhibit, Mr. Clerk. Q. And, Mr. Kearns, so there will be no misunderstanding, I'm going to show you a gun, but this is the gun that the police—— that a police officer took from you under date of September 20th, is that correct? Mr. Cohn: Oh, your Honor, I'm going to object to this. This is terrible. Mr. Hanley: I wasn't—— Mr. Cohn: This is terrible misconduct on the part of the District Attorney. The Court: Mr. Hanley, we had a distinct agreement what you were to question this man about, and you are now questioning him about something that I construe to be a violation of that understanding. Mr. Hanley: Well, your Honor, if the Court feels so, I intended no wise.

Mr. Cohn: He has got to go through with it now. We are going to bring it out, anyway. The Court: Well, I suppose now, but I—— Mr. Hanley: If the Court feels that what I have done—I thought—— The Court: How else can I feel? There was a distinct understanding that you were to ask him about one gun, and one gun only; now you are asking about two guns. How else can I feel? Mr. Hanley: Well, your Honor, may I approach the bench for a moment, your Honor, with Mr. Cohn? The Court: No. What do you want to do, Mr. Cohn? Mr. Cohn: I don't know. We might as well continue on with this. I'm going to bring the whole thing out with the jury, anyway. Might as well lay it out there, but I think the jury should be admonished that the man is on trial for two robberies. He is not on trial for possession of the gun. As I informed your Honor yesterday, the man had a gun previous to this. He has been charged with that crime. I advised your Honor that he is going to plead guilty to that crime. The gun was in the possession of the police at the time this robbery took place; couldn't possibly have been used in the robbery. Mr. Hanley: Which is exactly the point I was attempting to bring out. He said he had a .38, and I was going into what I believe was a second .38, but I wanted to establish, in fairness, that this is not the gun. The Court: Go ahead, Mr. Hanley. Mr. Hanley: All right. Q. It is a stub-nosed barrel, or it is a short gun? A. Yes, sir. Q. Now, do you know Patricia Adler? A. Yes, sir. Q. She is a friend of yours? A. Yes, sir. Q. You have known her for some months? A. Yes, sir. Q. Now, on one occasion, and I can't fix the date other than to say that it was during the month of September, did you show Pat Adler a gun, the only description I could give is about that length (indicating)? The Court: Well, let's have, for the record,—— What would you estimate that to be? Mr. Hanley: Well, I would estimate about eight or nine inches, your Honor. The Witness: I did not. Mr. Hanley: Q. You did not? A. I did not. Q. Specifically, a dark gun? A. I did not show her a dark gun, no. Q. And you did not show her a gun about that size, about eight or nine inches, or the size that I'm indicating here (indicating)? A. I did not show her a gun that size, no." Here the court specifically asked counsel for defendant what he wanted to do about the alleged misconduct of the deputy district attorney. ■ There was open to the defendant the choice of pressing an objection, a motion to strike, with proper admonitions to the jury to disregard all refer-

ence to the gun in the possession of the police, or a motion for a mistrial, or, on the other hand, to agree that the subject might be pursued with such advantage to the defendant as might accrue from a showing that the only revolver he admitted having had prior to the robberies had been taken from him by the police and retained by them, so he could not have used it, and had no gun left with which to have committed the crimes. He chose the latter course and expressly consented to continuing with this line of testimony, stating he was "going to bring the whole thing out with the jury, anyway." This was a clear waiver of objection. (*People* v. *Westlake,* 62 Cal. 303; *People* v. *Pratt,* 77 Cal.App.2d 571 [175 P.2d 888].)

Moreover, it was proper to bring out facts tending to prove prior possession by defendant of a weapon similar to that used in one of the robberies. (*People* v. *Bolton,* 215 Cal. 12 [8 P.2d 116]; *People* v. *Richardson,* 74 Cal.App.2d 528 [169 P.2d 44]; *People* v. *Beltowski,* 71 Cal.App.2d 18 [162 P.2d 59]; *People* v. *Hightower,* 40 Cal.App.2d 102 [104 P.2d 378]; *People* v. *Bonner,* 5 Cal.App.2d 623 [43 P.2d 343]; *People* v. *Abbey,* 124 Cal.App. 412 [12 P.2d 655].) Defendant, not the People, created the situation which made it inevitable that competent cross-examination would disclose the facts relative to the short barreled Smith and Wesson seized by the police. There was no error in the ruling of the trial court. Indeed, if any basis for claim of prejudice existed, we are of the opinion that it was wholly effaced by the admonition delivered by the trial judge to the jury in the following language: "The Court: Before you question him about the guns, let me speak to the jury for a moment.

"Now, this throws a pretty heavy burden on you, the jury, for this reason: The second gun to which the district attorney referred was in the hands of the police at the time that these robberies occurred, so it couldn't possibly have been used in this—in these robberies. However, it is a simple fact, to those of us who lead normal lives, that the bare fact of the possession of the gun is sometimes injurious to the defendant. That is, the knowledge by the jury, the bare fact of the possession of the gun, is inclined to prejudice a jury against a defendant, and that is why I didn't want—— you are a perfectly good jury, but that is just the way human beings work. So, now, you are going to have to work, and be sure in your minds that the fact that this man possessed a gun earlier, even though it was in the possession of the police at the time

of the commission—— be sure that that doesn't prejudice you against this man in any way, because it has no bearing. The gun that is here in the courtroom has no bearing on this case at all. It couldn't have been used in the robberies. Whatever explanation he has as to why he had it really has no bearing, and whether his counsel desires to lead him through an explanation is up to his counsel. As far as I'm concerned, you must work very hard to be sure that the bare fact of the existence of that gun doesn't prejudice you against this man. Go ahead.''

The second item of claimed error relates to the admission of evidence of previous crimes committed by defendant some five or six years prior to the robberies involved here. This evidence was admitted over objection as tending to show a similar pattern, scheme or *modus operandi* to that employed in this case under the rules applied in *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924]; *People* v. *Morani,* 196 Cal. 154 [236 P. 135]; *People* v. *Grimes,* 113 Cal.App.2d 365 [248 P.2d 130]; *People* v. *Burns,* 109 Cal.App.2d 524 [241 P.2d 308, 242 P.2d 9]; *People* v. *Miner,* 96 Cal.App.2d 43 [214 P.2d 557], and *People* v. *Hall,* 25 Cal.App.2d 336 [77 P.2d 244]. Remoteness of five or six years in point of time does not affect the admissibility of the evidence, but at most affects only its weight. Frank Joseph Oneto testified that the defendant entered his liquor store at 5170 Mission Street, San Francisco, on two occasions, one in 1949 and one in 1950; that he threatened him with what appeared to be a revolver held beneath a long coat and robbed him, causing him to take the money from a cash register, place it in a paper bag and hand it to him, then turn his eyes downward toward the cash register or the floor while he departed. In arguing that the conduct of defendant on these occasions was dissimilar to that involved in the instant case, defendant points out many differences of specific detail and urges that the asserted similarity exists only in general phases of conduct which would be likely in any robbery. However, various points of similarity, some general, and some quite remarkable, existed in all four instances. In each, the defendant was positively identified. Each offense was at night. Defendant used or simulated the use of a pistol or revolver. Each time, he wore a long, light-colored coat and no hat. On the earlier occasions, his hair appeared quite long; in the instant robberies, the hair was unruly or mussed. Oneto's store was a liquor store; Johnson's and Citti's were grocery stores which had liquor

departments. Each incident was a holdup. Defendant in each instance shopped around and brought articles to or near the cash register. Each time, the contents of the cash register were demanded and the victim was ordered to put the money in a paper bag and to keep looking at the cash register, or at the floor, or downward, while the defendant departed. We think there was no error in admitting the evidence of the former crimes with these points of similarity present.

■ Appellant's third claim of error has been disposed of by what we have said concerning the propriety of going into the question of prior possession of a revolver similar to one used in the offenses on trial. Since there was no error in pursuing that subject and developing facts tending to show the probability of defendant's having had a gun or guns different from the only one admitted by him, there was no misconduct in the deputy district attorney arguing this phase of the evidence. It had distinct relevancy, as defendant admitted only his possession of the short-barreled Smith and Wesson and was asserting the impossibility of its use by him in the crimes charged. If, however, there was to be any claim of prejudicial misconduct in this regard, objection should have been raised and a request should have been made for the court to admonish the jury. ■ Objectionable conduct of this nature, if such it be, must be opposed at the time before it can be made ground for appeal. (*People* v. *Sampsell,* 34 Cal.2d 757 [214 P.2d 813]; *People* v. *Codina,* 30 Cal.2d 356 [181 P.2d 881]; *People* v. *Cuevas,* 148 Cal.App.2d 331 [306 P.2d 510].)

The assertion that the deputy district attorney intimidated the witness Raymond Choy into changing his testimony is devoid of merit. It rests upon the naked assertion of defendant's attorney. The record furnishes no support for the argument either that this witness changed his story or was frightened by being interviewed by the deputy district attorney.

The scope of the cross-examination of defendant by the deputy district attorney permitted by the court over objection by defense counsel was well within proper bounds. ■ Defendant had purported to have a rather definite recollection of time and events covering the period related to the alleged time of the robbery on the evening of October 17. His attempted alibi rested heavily upon the accuracy of his recollection concerning what he did and what note of

time he made from around 7 until after 8 o'clock that evening. It thus became extremely important to test recollection by questioning him concerning his actions at other times that day and evening. Wide latitude should be allowed in cross-examination for the purpose of testing accuracy of recollection or credibility in a situation like this. There was no abuse of the court's discretion. (*People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243]; *People* v. *Whitehead,* 113 Cal.App.2d 43 [247 P.2d 717]; *People* v. *Tou Jue,* 66 Cal.App. 235 [225 P. 759].)

Finally, appellant urges that the trial judge erred in denying the motion for a new trial. The claim that defendant was denied a fair and impartial trial is based upon the grounds of appeal of which we have already disposed. We need not consider the alleged errors previously discussed beyond saying that none of them, either considered alone or collectively, deprived appellant of his right to a fair trial. As to the affidavits of alleged newly discovered evidence, that of Patricia Adler is stressed. ▮ She stated she was shown the revolver in the possession of the police on March 27, 1956, after the trial, and was quite sure it was the same one she saw in defendant's possession in late August or early September, 1955. This witness testified for the prosecution. She could have been cross-examined as to whether the gun in court was the one she had seen earlier. The trial judge was quite correct in rejecting the claim that her testimony, as outlined in the affidavit, was newly-discovered evidence sufficient to justify a new trial. (*People* v. *Poor,* 52 Cal.App.2d 241 [126 P.2d 146]; *People* v. *Gist,* 28 Cal.App.2d 287 [82 P.2d 501]; *People* v. *Elder,* 55 Cal.App. 644 [204 P. 29].) ▮ The affidavits of the driver of the Luxor Cab and the manager of the Luxor Cab Company tend to show that one of their cabs made but one call at Cooper and Varni's Bar the night of October 17; that the driver picked up one passenger there and took him to the vicinity of Post and Mason Streets; that the call was the first of five calls made between 8 and 9 p. m. and was probably shortly after eight. This was evidence which could have been produced by the exercise of due diligence at the trial. It tended to contradict defendant's own testimony that he joined a friend and went to dinner with him at that time. It was on a subject presumably within defendant's knowledge at the trial. Other affidavits were to facts which tended to add credence to the stories of the alibi witnesses, but these were of a cumulative nature and did not

tend to fix the crucial time element any more definitely than the testimony of witnesses at the trial. One affidavit was that of Attorney Shostak, associated with appellant's counsel, Nathan Cohn. This affidavit contains much hearsay. Among other things, it says affiant heard Mr. Cohn interview the witness Choy before the trial and heard Choy say that the defendant had been in his establishment at 7:40 or 7:45 on the evening in question. No explanation is offered why this subject was not pursued during the trial where Choy was a witness for the defendant. The motion for a new trial was addressed to the sound discretion of the trial court and the elements of the standard by which such motion should be judged when newly-discovered evidence is claimed are well established. (*People* v. *McGarry,* 42 Cal.2d 429 [267 P.2d 254] ; *People* v. *Sutton,* 73 Cal. 243 [18 P. 86] ; *People* v. *Richard,* 101 Cal.App.2d 631 [225 P.2d 938].) On the record before us, we are unable to say that the alleged newly-discovered evidence would have rendered a different verdict reasonably probable upon a retrial or that the court in any way abused its discretion. (*People* v. *Poor,* 52 Cal.App.2d 241 [126 P.2d 146].) The defendant was convicted upon positive evidence. The attempt to establish an alibi did no more than raise a conflict which the jury resolved against the defendant as not creating a reasonable doubt of his guilt. The evidence was sufficient to sustain the verdict.

The judgment and the order denying the motion for a new trial are affirmed.

Dooling, Acting P. J., and Kaufman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 8, 1957. Carter, J., was of the opinion that the petition should be granted.