[Crim. No. 3648. First Dist., Div. One. May 9, 1960.]

THE PEOPLE, Respondent, v. DAVID SHAPIRO, Appellant.

Ted James Kukula, under appointment by the District Court of Appeal, and Alan Grove for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and James A. Gaughran, Deputy Attorneys General, for Respondent.

BRAY, P. J.—Defendant appeals[1] from a judgment of conviction after jury verdict of second degree burglary. Defendant admitted five prior convictions of felony.

### QUESTIONS PRESENTED[2]

1. Alleged error in admission of evidence of a prior offense.
2. Alleged error in rejection of evidence.
3. Instruction on defendant's failure to testify.
4. Alleged misconduct of court and counsel.
5. Denial of motion to dismiss information.
6. Alleged suppression of evidence.

### EVIDENCE

Miss Malnyk, living in apartment 20 at 855 Pine Street, San Francisco, spent the Labor Day holidays at Lake Tahoe. Tuesday morning she was leaving her apartment for work. She removed from the inside of the blue American Tourister traveling case, which she had used on the trip, two detachable snap-on pockets. These she placed in a drawer. When she left the apartment that morning everything was in its proper place, including the traveling case. The front door automatically locked. Returning that evening, she noticed that several items were missing, including the case, although the detachable pockets were still in the drawer. She called the police who arrived almost immediately. They called her attention to certain marks on the frame of the door which indicated that the door had been tampered with, apparently to effect an entry.

Mrs. Smith lived in apartment 18 on the fourth floor, which apartment is at the other end of the hallway into which Miss

---

[1]Although defendant's notice of appeal reached the County Clerk's Office on the 11th day after sentence, it was mailed on the 10th day from Vacaville where defendant was confined. This constituted constructively a filing within time. (See *People* v. *Dailey,* 175 Cal.App.2d 101 [345 P.2d 558].)

[2]Court-appointed counsel, with great assiduity, has toothcombed the record for points to urge upon this appeal. In spite of his diligence and zeal the points raised are without merit.

Malnyk's apartment opens. About 11:45 a. m. that Tuesday, she saw defendant in the hallway in front of apartment 20. She said to defendant that she did not think the ''young ladies are at home.'' He replied that the young ladies were having a day off and that he had seen them the night before. Mrs. Smith then suggested that the manager in apartment 3 knew the girls' activities and perhaps could help him. He, while ringing the bell to apartment 20, said that he thought they were still asleep, ''They were expecting me around noon.'' Defendant then said that he thought that he would go over to their office. During this conversation Mrs. Smith and defendant were standing approximately 10 feet apart. Defendant and Mrs. Smith then rode down together in the elevator, after which they separated. Mrs. Smith identified defendant in the courtroom and had previously identified him in the line-up. Her identification of him was positive and unqualified.

Eugene Osuna, Inspector, Burglary Detail, San Francisco Police Department, based upon information he had received from one Gloria went to her apartment approximately three weeks after the suitcase was stolen. There he found the suitcase in question. It had no side pockets in it. The next day he questioned defendant about the suitcase he had recovered from Gloria's apartment. Defendant said he recognized the suitcase, that he got it a long time ago, but could not remember where he bought it. He said he gave it to Gloria a long time ago but could not remember when.

Inspector Osuna testified that the marks on the door indicated that entry to apartment 20 had been apparently effected by prying loose the molding with a screwdriver or similar implement and then inserting a piece of celluloid or similar material between the door and the door frame springing the spring lock. Bits of celluloid were found on the floor.

Mrs. Patricia Buckley and Inspector Robert Casciani testified, over objection, to a prior burglary committed six years earlier by defendant wherein he gained entrance to the premises by using celluloid to spring a spring lock. Defendant did not testify but did call his niece, who testified that defendant left her apartment at 10:45 a. m. on the day in question, taking with him her 4-year-old son on a shopping trip, which included the purchase of clothing, a haircut and lunch for the boy. This trip took approximately three hours and fifteen minutes.

1. *The Prior Offense.*

 It is well settled in California that evidence of a prior crime or crimes may be admitted if it tends to show ''a similar

pattern, scheme or *modus operandi* to that employed in'' the case being tried. (*People* v. *Kearns,* 149 Cal.App.2d 113, 121 [307 P.2d 1015] ; *People* v. *Peete,* 28 Cal.2d 306, 314-315 [169 P.2d 924].) ''Remoteness of five or six years in point of time does not affect the admissibility of the evidence, but at most affects only its weight.'' (*People* v. *Kearns, supra,* 149 Cal.App.2d 113, 121.)

 ''Usually, it is a primary question for the court to determine whether facts pertaining to offenses other than that charged show a general pattern, scheme or plan and are sufficiently similar and possess a sufficiently high degree of common features with the act charged to warrant an inference that if defendant committed the others he committed the one charged, and the question of remoteness usually goes to the weight and not to the admissibility of the evidence.'' (*People* v. *Brown,* 170 Cal.App.2d 80, 83 [338 P.2d 504].)

 The similarity of the *modus operandi* of the two crimes justified the admission of the evidence. Relevant here is the statement in *People* v. *Peete, supra,* 28 Cal.2d 306, 318-319, to the effect that the expiration of a number of years between two crimes is not significant when, as here, the defendant was in the penitentiary during a portion of the time and was under the supervision of parole authorities thereafter.

Defendant refers to *People* v. *Albertson* (1944), 23 Cal.2d 550, 576 [145 P.2d 7], which pointed out that evidence of other crimes should be admitted with extreme caution ''and if its connection with the crime charged is not clearly perceived, the doubt is to be resolved in favor of the accused.'' (P. 577.) That case is not in point for the reason that here there is no doubt of the relevancy of the details of the other crime as those details are similar to those of the crime in question. The tests given in the Albertson case (p. 578), that the proof must show (a) that the accused committed the collateral offense, and (b) that there was identity of crime, scienter, intent or system that showed that the person who committed the one crime must have committed the other, are met in this case. It should be pointed out that the court properly and fully instructed the jury regarding the use which the jury might make of this evidence.

2. *Rejection of Evidence.*

 Defendant asked Mrs. Smith : ''Do you think that you would be able to identify anyone else whom you had seen for

such a brief period, and asked to identify them at a later date, besides this man?" While the witness should have been permitted to answer this question, no possible harm could have resulted from the failure to allow it. Defendant cross-examined Mrs. Smith at great length concerning her identification of defendant and she was positive in her identification of him. It is inconceivable that had she answered the question, any different verdict than that given by the jury would have resulted. ▮ Defendant also asked: "I will ask you just what is there about the appearance of Mr. Shapiro that would enable you to identify him so positively after such a brief encounter?" The objection to that question was sustained on the ground that it had been previously asked and answered when Mrs. Smith had answered the question: "Now, what physical appearance does Mr. Shapiro make that you would be positive that he was the person that you spoke to in the hall?" Obviously, the questions were the same and the court did not err in refusing to permit it to be asked again.

### 3. Instruction on Failure to Testify.

▮ The court gave the instruction contained in California Jury Instructions—Criminal, 51 (P. 75). The form of this instruction is supported by *People* v. *Adamson*, 27 Cal.2d 478 [165 P.2d 3]; *People* v. *Liss*, 35 Cal.2d 570 [219 P.2d 789], and has been approved in *People* v. *King* (1951) 103 Cal.App. 2d 122, 127 [229 P.2d 20]; *People* v. *Reinschreiber* (1956) 141 Cal.App.2d 688, 701 [297 P.2d 658]. See also *People* v. *Steccone* (1950) 36 Cal.2d 234, 239 [223 P.2d 17]. Defendant cites no cases to the contrary, contenting himself with the statement that by such an instruction defendant is penalized for exercising the privilege given him in article I, section 13., California Constitution, to not testify. The same section, however, also provides that both court and counsel may comment on his failure to testify and such failure may be considered by the jury.

### 4. No Misconduct of Court or Counsel.

▮ Defendant's contention that the court's conduct toward his counsel was highly prejudicial is utterly without foundation. The instances cited (such as the court stating, "Counsel, I would prefer counsel to remain on the other side of the bar in questioning the witness . . ."), constitute no more than the usual action of a court in limiting argument and do not justify in the slightest degree defendant's characterization of them.

■ Likewise, there is no merit in defendant's contention that the assistant district attorney was guilty of misconduct in commenting upon the failure of defendant to take the stand. The assistant district attorney had the right to do so. In his argument the latter stated that defendant's attorney had attempted to explain away defendant's failure to take the stand by claiming that if he did so defendant "could be crucified with regard to the prior offense." The assistant district attorney then stated in effect that that was not the reason, but that the reason defendant had not testified was because he could not deny the facts as alleged by the prosecution's witnesses and that his failure to explain or deny the incriminating evidence coupled with that evidence indicated his guilt. While we do not have before us defendant's counsel's argument and therefore cannot determine if said counsel made the statement attributed to him, it is nowhere denied that he made that statement. There was nothing improper in the argument of the assistant district attorney as it was a fair comment on the defendant's failure to testify.

5. *Failure to Dismiss the Information.*

■ While defendant moved to dismiss the information for alleged failure to bring him to a speedy trial, his grounds were not that he was not given a speedy trial after the filing of the information, but that he was not "booked" for 23 days after being arrested. Defendant contends that he was taken into custody September 10, 1958, released September 16, 1958, again taken into custody September 24, 1958, but not actually "booked" until October 16, 1958, and that no charges were filed against him from September 10 to 16, 1958. He cites sections 825 and 849, Penal Code, which deal with the time to be taken before a magistrate after arrest. He offered no record and we have none before us. He was a probationer and we have no way of knowing whether he was taken into custody for violation of probation (see Pen. Code, § 3056), on different charges as claimed by plaintiff, or when he was arrested on the charge upon which he was convicted. The prosecution claims that defendant was not arrested on the charge here involved until immediately before he was taken before the magistrate.

Assuming that defendant was detained after arrest for more than the time prescribed in section 825, Penal Code, that fact alone would not require a reversal. (*People* v. *Guarino*, 132 Cal.App.2d 554, 558 [282 P.2d 538].) Defendant attempts to

tie in the alleged failure to promptly take him before a magistrate with an admission which Officer Osuna testified that defendant made to him the day after defendant's arrest. No contention has been made that the admission was not voluntarily made. Therefore, it was admissible even though made during a period of illegal detention. (See *Rogers* v. *Superior Court,* 46 Cal.2d 3, 10 [291 P.2d 929].) Further, assuming that defendant was not taken before the magistrate immediately after arrest, the admission was made prior to the expiration of the time allowed within which to bring defendant before a magistrate and, hence, the delay had no bearing on the admission. (*People* v. *Zammora,* 66 Cal.App.2d 166 [152 P.2d 180].) The court properly denied defendant's motion to dismiss the information.

6. *Alleged Suppression of Evidence.*

By a bit of circumlocution defendant contends that the fact that the prosecution did not produce Gloria, the girl to whom defendant had stated he gave the stolen suitcase, constituted suppression of evidence. "'... so long as there is fairly presented to the court the material evidence bearing upon the charge for which the accused is on trial . . . [t]here is no requirement in either the federal or state constitution that all witnesses or persons who may have knowledge of the crime be produced in court or called to testify." (*People* v. *McCrasky* (1957), 149 Cal.App.2d 630, 634-635 [309 P.2d 115].)

The testimony of the officer as to defendant's statement, which statement defendant did not deny, obviated the necessity of calling Gloria. Moreover, Officer Osuna testified that after an initial questioning of Gloria by the police they "made an attempt to contact her. . . . However, she disappeared from the town."

Defendant contends that this was a close case on the facts, basing his contention mainly upon his niece's testimony that defendant was on a shopping tour with her son at the time Mrs. Smith saw him at the door of Miss Malnyk's apartment (the niece did not accompany them on the tour), and that therefore any error must be prejudicial. (See *People* v. *Weatherford,* 27 Cal.2d 401, 403 [164 P.2d 753].) However, there was no substantial error and this is not a close case. Mrs. Smith's positive identification of defendant (and she had ample opportunity to observe him); defendant's admission that he gave the suitcase to Gloria and his failure to explain where he got it, or to testify at all; the similarity of

this burglary to the one theretofore committed by him; the fact that his only alibi was his niece's testimony that he had gone out with her son for three and one-quarter hours, all taken together, make a very strong case of guilt.

Judgment affirmed.

Tobriner, J., and Duniway, J., concurred.