[Crim. No. 8048. Second Dist., Div. Two. Oct. 25, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH GILBERT HERNANDEZ, Defendant and Appellant.

Robert Barnett, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Defendant was charged by information with burglary from an automobile in violation of section 459 of the Penal Code. He was arraigned on April 7, 1961, and at that time the public defender was appointed to represent him as his attorney. He entered a plea of not guilty. Trial was set for May 19, 1961, and on that date defendant moved to have the public defender relieved as counsel. The motion was granted after explanation of what the effect would be and recommendation that defendant not insist on his motion; but he did insist and he was substituted in propria persona, and the trial was continued until May 24th. The trial took place on May 24th and May 25th and the jury found defendant guilty of second degree burglary. A motion to dismiss and a motion for new trial were both denied and defendant was sentenced to the state penitentiary. Defendant appeals, being now represented by private counsel.

Mrs. Costello, a witness, testified that on March 17, 1961, at approximately 5 in the afternoon, she parked her car in a vacant lot. She left her purse on the seat of the car having covered it with a baby's blanket. She closed all the windows and locked all the car doors. She returned 10 or 15 minutes later to find that the wind wing of her car was open, the latch having been broken off; it was lying in the grass in front of the car. Her wallet which contained $10 was missing from her purse. A few days later it was found along the highway near Marineland but the money had been taken from it.

Another witness, Mr. Comstock, testified that he had parked his Camper (a truck with living quarters mounted on the rear) on the same lot during the same period of time. On the same afternoon he went to the back of the Camper to get a jacket. Through the front window of the Camper he saw a hand reaching in a window; he looked out a little further and saw defendant walking away from the Camper. He then observed defendant walking down a line of automobiles looking into cars and trying door handles on four or five automobiles until he came to Mrs. Costello's automobile. Defendant then returned to his own car which was parked next to

the Camper. He got something from under the seat of his car, concealed it under his coat and walked back to the front seat of Mrs. Costello's car on the passenger's side. He placed something against the window and gave the impression that he was prying down. Mr. Comstock then observed a metallic object fly out into the field and saw the defendant bend down over Mrs. Costello's automobile and it appeared that he opened the car door. The witness wrote down defendant's license number and walked over to Mrs. Costello's car. At that time Mrs. Costello was returning to her car. The police came and Mr. Comstock told them the story. Two days later he was called down to the Palos Verdes Police Station where he identified defendant in a lineup.

█ Defendant claims three instances of misconduct on the part of the prosecuting attorney. Defendant did not take the stand in his own behalf. In the People's closing argument the prosecuting attorney referred to defendant's argument to the jury as follows: "He says that there is no evidence in this case, that he has not been convicted of other crimes. It's true, there is no evidence here that he has been convicted of other crimes. However, if he took the stand, I would have liked to ask him a few questions about other things that I could properly have asked him about, but he knows that I would have asked him about it and didn't want to take the stand. . . ."

In *People* v. *Sanchez*, 35 Cal.2d 522 [219 P.2d 9], references in argument to prior convictions where the defendant was neither charged with them nor did he take the stand were deemed improper and in that case prejudicial under the facts. The comments of counsel in the instant case, although not express with respect to prior convictions, were subject to criticism. This argument is not adequately met by the People. However, in view of the rather overwhelming evidence the misconduct was not prejudicial.

█ The second item of alleged misconduct is the contention that the prosecutor appealed to the jury's passion and prejudice. At one point counsel stated to the jury that defendant was trying to make a mockery of the court and the judicial system and that he was trying to draw upon the jury's sympathy so that they would feel sorry for him and feel that the prosecutor and the judge had picked on him. The prosecutor was merely replying to argument made by the defendant in which he obviously sought the jury's sympathy because he was without counsel—this in spite of the fact that he dis-

charged the public defender. He argued that he did not have an opportunity to prepare his case and repeated references were made as to what a lawyer would have done had one represented defendant. The comments of the prosecutor were not excessive and were appropriate to combat those of defendant.

The third alleged item of misconduct is that the prosecutor told the jury that the court would instruct them that because defendant did not testify in his own behalf they "must" accept inferences adverse to defendant and reject inferences pointing to his innocence. This is clearly a misstatement of the law. However, the trial court correctly instructed the jury with respect to the inferences that may be drawn from defendant's failure to explain or deny evidence against him.[1] In addition, the court further instructed the jury: "In determining the guilt or innocence of the defendant you are to be governed solely by the evidence introduced in this trial and the law as stated to you by the Court." Any effect which the prosecutor's comments may have had was remedied by the instructions.

Defendant's next argument is that in spite of the fact that he discharged the public defender the court should have appointed private counsel for him at public expense. Counsel for defendant now concedes "that the cases in California all seem to hold that where a Defendant knowingly discharges the public defender he does not have the right to have the trial judge appoint him private counsel." (*People* v. *Simeone,* 132 Cal.App.2d 593, 597 [282 P.2d 971]; *People* v. *Douglas,* 187 Cal.App.2d 802, 806 [10 Cal.Rptr. 188]; *People* v. *Williams,* 174 Cal.App.2d 364, 378 [345 P.2d 47]; *People* v. *Hood,* 141 Cal.App.2d 585, 589 [297 P.2d 52].) It is argued that the court did not inquire into defendant's history, educational level, family background, legal background or any of the

[1]"It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely in his own decision. As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable. The failure of a defendant to deny or explain evidence against him does not, however, create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

factors "which have been stated to comprise the intellectual makeup of a defendant in determining whether he can effectually dismiss his court appointed counsel." It is further argued that the court did not determine whether defendant understood the issues and available defenses and had capacity to effectively waive counsel. The record, however, reveals that the court discussed the question with defendant at length, repeatedly advising defendant that the law did not entitle him to have private counsel appointed even though he discharged the public defender and defendant made repeated references to section 987 of the Penal Code, arguing that it authorizes the judge to appoint private counsel. Defendant throughout the exchange appeared to be remarkably articulate and at least as qualified as the average laymen to conduct his defense. However, defendant made it clear that he had no intention of conducting his defense but was going to stand on his "rights" under section 987 and remain mute throughout the trial,—this in spite of the fact that the court stated that it appeared that defendant was acting upon the poor advice of "jailhouse lawyers." Despite the defendant's expressed intention he in many instances did participate in the conduct of the trial with reasonable effectiveness. The cases cited with respect to this point by defendant are *Johnson* v. *Zerbst*, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357], *In re James*, 38 Cal.2d 302 [240 P.2d 596], and *People* v. *Chesser*, 29 Cal.2d 815 [178 P.2d 761, 170 A.L.R. 246]. These cases merely hold that where no effort is made on the part of the trial court to determine that there is a clearly understood intent to waive counsel and an appreciation of its effect, the waiver is not effective. These cases do not apply to the case at bar.

■ After the People had rested the following colloquy took place: "Now you may inform the jury of what your defense will be, assuming that you are going to take the stand, or if you have any other witnesses you may tell the jury what you anticipate those witnesses will testify to. MR. HERNANDEZ: Is it on the record that I am not acting as my attorney? THE COURT: You have stated that a number of times. That is a matter of law, whether you are acting as your own attorney or not. If you represent yourself, why, you are appearing in what is known as proper person, you are appearing in your own right. You have that right. MR. HERNANDEZ: Then I remain mute, your Honor. I cannot. THE COURT: Very well. Do you wish to take the stand? Do you wish to testify? MR.

HERNANDEZ: I cannot participate in this because I have no counsel. THE COURT: By that, I judge that you do not wish to take the stand. MR. HERNANDEZ: The Court may judge as it sees fit. I merely state—— THE COURT: Let's put it this way: If you do wish to take the stand, if you do wish to testify, do so now. MR. HERNANDEZ: I am not competent to judge whether I should or not. THE COURT: Well, the Court told you this morning that if you do not, the fact that you do not may be considered by the jury. MR. HERNANDEZ: I have nothing more to say, your Honor."

Defendant argues that the court should have asked defendant "do you have any witnesses that you wish to call?"; and it is asserted that by not doing this the court foreclosed defendant's right to call witnesses, thereby denying him a fair trial. There is no merit in this; the record discloses that the court was exceedingly solicitous of defendant's rights and demonstrated great patience under the circumstances.

It is clear from the above colloquy and from the entire record that defendant had no intention of calling any witnesses. It is also quite apparent that if defendant did have witnesses to call he would not have been too timid to so inform the court even after the court remarked that the evidence was closed. There was no error here.

▆▆▆▆ Appellant's last argument is that evidence of a prior crime was improperly admitted. Numerous witnesses testified that defendant was seen on May 13, 1956, walking along beside parked cars looking in the windows of cars and trying door handles and shaking the car as though he were attempting to open the door and get in. He was arrested and a search of his person produced a small crowbar. A search of his car revealed a camera, binoculars and $389 cash. The owner of the camera testified that he had left it in his locked car with his wallet and when he returned to the car he found that the wind wing had been broken open and the camera and the billfold taken. Appellant admitted the crime and entered a plea of guilty to a charge of petty theft. The record does not disclose a conviction. It is defendant's contention that the acts testified to are so remote as to time as to be inadmissible as evidence of "common design or plan" and therefore should not have been admitted under the general rule with respect to prior crimes. It is contended that the prejudicial effect of the testimony far outweighed any evidentiary value.

In *People* v. *Shapiro,* 180 Cal.App.2d 714 [4 Cal.Rptr. 788], the defendant was convicted of burglary. Evidence of a crime committed by him six years previously was admitted where the same technique for gaining entrance was employed in both instances. The opinion states: "It is well settled in California that evidence of a prior crime or crimes may be admitted if it tends to show 'a similar pattern, scheme or *modus operandi* to that employed in' the case being tried. (*People* v. *Kearns,* 149 Cal.App.2d 113, 121 [307 P.2d 1015] ; *People* v. *Peete,* 28 Cal.2d 306, 314-315 [169 P.2d 924].)

'Remoteness of five or six years in point of time does not affect the admissibility of the evidence, but at most affects only its weight.' (*People* v. *Kearns, supra,* 149 Cal.App.2d 113, 121.)

" 'Usually, it is a primary question for the court to determine whether facts pertaining to offenses other than that charged show a general pattern, scheme or plan and are sufficiently similar and possess a sufficiently high degree of common features with the act charged to warrant an inference that if defendant committed the others he committed the one charged, and the question of remoteness usually goes to the weight and not to the admissibility of the evidence.' (*People* v. *Brown,* 170 Cal.App.2d 80, 83 [338 P.2d 504].)

"The similarity of the *modus operandi* of the two crimes justified the admission of the evidence." (Pp. 718-719.)

No doubt the evidence of the 1956 crime was such that it might have influenced the jury, regardless of its evidentiary content. However, its prejudicial effect was minimized by an instruction of the trial court. The jury was told that it was permitted to use such evidence for only limited purposes and those purposes were set forth in the instruction.

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 19, 1962.