[Crim. No. 11414. Second Dist., Div. One. Aug. 8, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JESSIE LEE WATSON, Defendant and Appellant.

Daniel L. Dintzer, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip M. Rosten, Deputy Attorney General, for Plaintiff and Respondent.

KINCAID, J. pro tem.*—By amended information appellant Jessie Lee Watson was charged in count I and his codefendant, Ulysee Pryor, in count II with attempted grand theft from the person, in violation of sections 664 and 487, subdivision 2, Penal Code of California, a felony.

Following not guilty pleas a jury trial was had resulting in a guilty verdict as to both. A motion for new trial was denied. Watson was sentenced by placing him on probation, subject to conditions, and is the sole appellant.

The evidence shows that on October 28, 1964, Police Officer James Robinson, while assigned to the pickpocket detail of the Los Angeles Police Department, was on Broadway Street in plain clothes. President Lyndon Johnson was in the city and about noon was due to pass 5th Street and Broadway in his motorcade. Many people were in the vicinity, some standing in the streets which crossed Broadway.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Officer Robinson observed appellant and his codefendant Pryor walking together. They pushed into the crowd near 6th Street and stood to the left and rear of a man with a large and plainly visible wallet in his left hip pocket. Robinson observed appellant nudge Pryor, look down and nod toward the exposed wallet. As appellant moved close to the man and raised his right hand over the wallet, the man moved into the crowd. Appellant followed him, placed his right hand in the man's left rear pocket and touched the wallet. The man thereupon moved farther into the crowd and appellant moved away. Officer Robinson observed these activities while within two feet of defendants.

Robinson then saw codefendant Pryor holding another man's coattail with his left hand while reaching into the man's right rear pocket. The motorcade came alongside at this time and the crowd, including Pryor, surged forward toward the President's limousine. Pryor shook hands with the President and the motorcade moved on.

Pryor returned from the crowd and met appellant, who handed him something which Robinson could not identify. Defendants continued north on Broadway and again pushed into the crowd where they separated. Pryor approached another man, lifted the man's coattail with his left hand, reached into the man's right rear pocket and took hold of a wallet. The wallet was approximately half-way out when the man suddenly turned, slapped Pryor's hand, caught hold of the wallet and pushed it back into his pocket. Pryor then stepped among a group of marchers who were following the motorcade, took a political campaign sign from one, walked a few feet, discarded the sign and rejoined appellant. Following their arrest defendants were searched and some jewelry and money was found in the pocket of appellant.

By way of defense Pryor testified that he drove to Los Angeles with appellant, whom he met in San Francisco on a vacation. They arrived a few hours before their arrest and went to a jewelry store where he bought some jewelry for his wife and family, leaving him with a dollar and some change.

At the store, they heard that President Johnson was supposed to be in town, and decided to see him. They began walking in the direction of the parade and saw the motorcade approaching. As the motorcade stopped, people were pushing and shoving, and Pryor, having decided that he wanted to shake President Johnson's hand, pushed through the crowd and succeeded in doing so. He never touched anybody other than

"pushing backward and forward," and had never in his lifetime picked anyone's pocket.

Appellant testified that he had lived in Los Angeles for about two years. He and Pryor went to the jewelry store located at Fourth and Broadway on the north side of the street, where he also bought some jewelry. He never took anything from anyone's pocket, and had never in his lifetime picked anyone's pocket.

 Appellant's first contention on appeal is that the trial court erred in permitting defense counsel to withdraw a motion for a mistrial without prior consultation with defendant. The record discloses that appellant closed his direct testimony by denying that he had in his lifetime "ever attempted to pick anybody's pocket." During cross-examination inquiry was made into appellant's prior convictions for grand theft person in the belief that the priors arose from previous pickpocketing offenses. The deputy district attorney subsequently learned that the priors related to thefts by force and called this fact to the court's attention. A lengthy discussion between court and both counsel ensued as to what procedure should be followed to alleviate the error.

Defense counsel made a motion for a mistrial or in the alternative that the jury be admonished to disregard the improper testimony. The court thereupon stated: "I think that the thing to do is to declare a mistrial and get another jury over here and start the trial again. Everybody's here. We have got all the witnesses. Let's just start in again." Defendants' counsel then stated in effect that one of the defendants was from San Francisco. It meant they would have to stay over another night and he had a busy calendar for the next day. The court thereupon stated in effect that if defendants' counsel was convinced that an admonition would not cure the error in admitting the improper testimony he would be obliged to and would grant a mistrial. He further stated that if the mistrial were granted he would not force counsel to proceed with a new trial that same day. He would grant a reasonable continuance for trial.

Counsel for defendants then said: "We have gone this far, and it's been continued a few times. It's an old case. I would think an admonition would cure the error."

The district attorney then said: "Do I understand, then, that the motion for mistrial is withdrawn?" DEFENSE COUNSEL: "Yes . . . I am withdrawing that motion." After

reviewing the verbiage of the admonition with the attorneys the court thereupon addressed the jury as follows:

"Ladies and gentlemen of the jury, in the cross examination of this witness, testimony has been elicited which has tended to disclose that he has been, on two previous occasions, convicted of the offense of grand theft person. The testimony doesn't tend to disclose it, but we find from a further examination that, after a trial on those charges, the sentence of the trial judge set the offense as a misdemeanor, rather than as a felony; so therefore, they could not be used to impeach him as a prior felony conviction.

"Counsel and I are agreed that, although the questions were asked in good faith, and elicited in good faith for the purpose that they were intended, that they do not tend to prove anything in this case; and that therefore, the entire line of questioning which has been elicited from this defendant relating to his—these two other cases should not be considered by you for any purpose. They are not evidence in this case for any purpose.

"Now, it is not easy for a jury to set matters of that kind to one side and not consider them. But I would admonish you not to consider them individually, and not to discuss them as jurors when you are discussing the case in the jury room.

"They are not—they came into the case, I believe, in good faith. But I believe that we now know that they should not have come in; and they are matters which you should disregard entirely."

This admonition clearly impressed upon the jury the fact that they could not use the improper cross-examination in reaching a verdict. During the trial appellant testified as to a purported conversation with Officer Robinson outside the courtroom. An additional admonition to the jury to cover this factor followed: "Ladies and gentlemen, I gave you an admonition just at the recess relating to some testimony, and inadvertently neglected to recall that there was some additional testimony related to it, in context, relating to a conversation with a—a claimed conversation with Officer Robinson in the hallway. And that testimony also has been stricken from the case and should not be considered by you for any purpose."

During their deliberations the jury returned to the court to request that " 'Officer Robinson's testimony concerning Watson, Watson's testimony, People's interrogation, the defense interrogation,' " be read to them. The court thereupon admonished the jury: "Counsel and I are of the opinion that

there is no evidence on cross-examination which is still in the record as to Mr. Watson. If a juror has a different recollection, that would be another matter. But we can ask the reporter to look at it. However, we have consulted about the matter, and we do not think there was any portion of the cross-examination that remains in the record; that it all has been stricken. That is our belief, among the three of us.

"If you wish us to have the reporter read the record, we can have him do it. But I think there's no portion of it that remained in.

"Does that answer the questions that the jurors have?

"THE FOREMAN: Yes, I think so.

"THE COURT: Any juror who has anything further?

"Very well, I'll ask you to retire again."

Appellant's primary complaint is that the trial court committed prejudicial error by failing to consult with him personally before accepting counsel's decision to withdraw the motion for mistrial. He contends that the withdrawal of the motion for mistrial without his consent deprived him of a fundamental right which could only be waived by his personal action. Appellant concedes that he has been unable to find any legal authority directly supporting his position.

By analogy he argues that this "right" is a similar to that of right of counsel where a personal waiver is required, citing *Carnley* v. *Cochran*, 369 U.S. 506 [82 S.Ct. 884, 8 L.Ed.2d 70]; *People* v. *Stewart*, 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97].

Appellant has no constitutional right to be personally consulted before the court accepts a withdrawal of a motion for mistrial by defense counsel. A somewhat analogous situation was presented in the case of *Wilson* v. *Gray*, 345 F.2d 282. There the appellee claimed that his counsel could not waive his right to confrontation by the witnesses against him by stipulating to the submission of a case upon the preliminary transcript and that this was a right which demanded a personal waiver. The court said at page 286: ". . . . It has been consistently held that the accused may waive his right to cross-examination and confrontation and that the waiver of this right may be accomplished by the accused's counsel as a matter of trial tactics or strategy. . . ." (See *People* v. *Andrews*, 234 Cal.App.2d 69, 79 [44 Cal.Rptr. 94].)

In the recent case of *People* v. *Reeves*, 64 Cal.2d 766, 773-774 [51 Cal.Rptr. 691, 415 P.2d 35] our Supreme Court held that it was within the discretion of counsel for a defendant to offer

to stipulate that an issue of sanity be submitted on the basis of a medical report and, where undisputed evidence showed a killing to have occurred in the perpetration of robbery, to offer to stipulate that the murder was of the first degree by operation of law. The court then went on to say (p. 774): "To justify relief on the ground of constitutionally inadequate representation of counsel, '"an extreme case must be disclosed" [Citations]. . . .' (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) Defendant has the burden, moreover, of establishing his allegation of inadequate representation 'not as a matter of speculation but as a demonstrable reality.' (*Adams* v. *United States* (1942) 317 U.S. 269, 281 [63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435]; accord, *People* v. *Robillard* (1960) *supra* 55 Cal.2d 88, 97 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086].)"

The action of appellant's attorney in withdrawing the motion for a mistrial in the face of the foregoing strong admonitions demonstrates that he was not deprived of effective aid of counsel. As stated in *People* v. *Brooks,* 64 Cal.2d 130, 139-140 [48 Cal.Rptr. 879, 410 P.2d 383]: "This did not reduce the trial to a 'farce or a sham,' the test used to determine whether counsel's representation was ineffective. [Citations.] In the heat of a trial, defendant's counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings. Except in rare cases an appellate court should not attempt to second-guess trial counsel. . . ."

Appellant's complaint, whether viewed as an allegation of the infringement of a constitutional right or an attack on the competency of counsel, seems to resolve itself into a claim that he has an innate right to participate in trial decisions. But as has been frequently emphasized a defendant is not entitled to have his case presented in court by himself and by counsel. So long as defendant is represented by counsel at trial he has no right to be heard by himself. (*People* v. *Darling,* 58 Cal.2d 15, 19 [22 Cal.Rptr. 484, 372 P.2d 316]; *People* v. *Mattson,* 51 Cal.2d 777, 789 [336 P.2d 937].)

Appellant was given a choice as to what procedure would be followed once the nature of the prosecution's error was discovered. He could have obtained either a mistrial or admonitions to the jury. But appellant obviously could not have both, as the two solutions were mutually exclusive—in choosing one he would have to forego the other.

Appellant chose to receive admonitions to the jury,

expressly stating that he was withdrawing his motion for a mistrial. This decision constituted a waiver of his right to a mistrial.

A nearly identical situation arose in the case of *People* v. *Kearns*, 149 Cal.App.2d 113, 119-120 [307 P.2d 1015]. There the prosecution made an improper reference to a gun taken from defendant during defendant's trial for two robberies. When the error was discovered, the court, as here, specifically asked counsel what he wanted to do about the alleged misconduct of the deputy district attorney. Defense counsel answered he was ". . . going to bring the whole thing out with the jury, anyway . . . but . . . the jury should be admonished that the man is on trial for two robberies. He is not on trial for possession of the gun. . . ." (P. 119.) On appeal, appellant argued that his counsel's action was prejudicial. The court met this contention as follows: "There was open to the defendant the choice of pressing an objection, a motion to strike, with proper admonitions to the jury to disregard all reference to the gun in the possession of the police, or a motion for a mistrial, or, on the other hand, to agree that the subject might be pursued with such advantage to the defendant as might accrue from a showing that the only revolver he admitted having had prior to the robberies had been taken from him by the police and retained by them, so he could not have used it, and had no gun left with which to have committed the crimes. He chose the latter course and expressly consented to continuing with this line of testimony, stating he was 'going to bring the whole thing out with the jury, anyway.' This was a clear waiver of objection. . . ."

█ It would seem that the repeated admonitions to the jury adequately cured the errors complained of as to the admitting of certain evidence. This is further indicated by the fact that codefendant Pryor was also convicted. His conviction rested solely upon the testimony of Officer Robinson and he was not asked any questions about prior conviction. This testimony is the same evidence as was offered against appellant if the improper cross-examination is laid aside. If this testimony was strong enough to convict Pryor it obviously was strong enough to convict appellant and it is not reasonably probable a result more favorable to him would have occurred had the prior conviction never been mentioned. █ His contentions, like any attack upon a procedural defect at trial, is governed by the rules of article VI, section 4½ of the California Constitution, which has been interpreted to mean that a miscarriage

of justice should be declared only when the appellate court after an examination of the entire cause, including the evidence, is of the opinion that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].) ██ Under the evidence and circumstances here shown we cannot say that on a retrial of his case it is reasonably probable that a result more favorable to him would have been reached.

██ One additional point raised by appellant is that the court erred in excluding certain proffered testimony which he maintains was material to his defense. He offered to produce as a witness the owner, or one of his employees, of the jewelry store from which he testified he purchased certain jewelry on the morning of his arrest. His counsel stated that this evidence was offered for the purpose of showing that defendants were in downtown Los Angeles on the day in question to buy jewelry and not to pick pockets. On learning of such intended testimony, the district attorney objected on the ground such testimony would be immaterial to the case, and, after hearing defense counsel's offer of proof, the trial court indicated it would sustain the objection. The witness was not called and was excused.

Defense counsel's reason for desiring to present this testimony was to ". . . corroborate the testimony previously given by both these witnesses [the defendants], as to their buying jewelry from him," a fact which had no material bearing on the case.

██ "The general tests of the admissibility of evidence in a criminal case are: . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense?" (*People* v. *Peete,* 28 Cal.2d 306, 315 [169 P.2d 924] ; see also *People* v. *Lindsay,* 227 Cal.App.2d 482, 498 [38 Cal.Rptr. 755] ; *People* v. *Scott,* 218 Cal.App.2d 249, 253 [3 Cal.Rptr. 225].) The disputed testimony does not meet this test. Appellant was charged with attempted grand theft person. ██ To establish this charge the prosecution was compelled to present evidence showing: (1) a person from whom the property may be taken; (2) an intent to take such property against the will of the owner; and (3) an act performed tending to accomplish the foregoing. (*People* v. *Twiggs,* 223 Cal.App.2d 455, 460 [35 Cal.Rptr. 859].) The record discloses that such evidence was presented.

Appellant's avowed purpose for coming earlier to the general area where he was later arrested was wholly immaterial to the charge against him as the charge was confined solely to events subsequently occurring.

As said in *People* v. *MacArthur*, 125 Cal.App.2d 212, 219 [270 P.2d 37] : "Materiality is a question of law, and the trial judge has a wide discretion in determining admissibility." No abuse of discretion on the part of the trial judge is shown in rejecting the offer of this immaterial testimony.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.