Joseph Gilbert **HERNANDEZ**, Petitioner,

v.

Walter E. **CRAVEN**, Warden, Folsom State Prison, Represa, California, Respondent.

Civ. No. 72–1315.

United States District Court, C. D. California.

Oct. 31, 1972.

Hugh R. Manes, Los Angeles, Cal., for petitioner.

Evelle J. Younger, Atty. Gen., Edward A. Hinz, Jr., Chief Asst. Atty. Gen., Crim. Div., Doris H. Maier, Asst. Atty. Gen., Writs Section, Russell Iungerich, Alan G. Novodor, Deputy Attys. Gen., for respondent.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

HAUK, District Judge.

Petitioner, a California State prisoner incarcerated at Folsom Prison, was sentenced in Los Angeles County Superior Court on January 12, 1971, following his conviction in 1970 by a jury of 2nd degree robbery (Penal Code § 211). The

conviction was affirmed in an unpublished opinion by the Court of Appeal, Second Appellate District, on January 3, 1972. A petition for rehearing was denied, and petition for hearing was denied by the California Supreme Court on March 16, 1972. Thus, State remedies have been exhausted as required by, 28 U.S.C. § 2254, and the prisoner now seeks a Federal Habeas Corpus Writ.

An Order to Show Cause why the writ should not be granted was issued, and a hearing was held on August 7, 1972. Pursuant thereto and for the reasons expressed in this written Order, which also shall constitute the findings of fact and conclusions of law supporting the Order, the petition for writ of habeas corpus is denied.

The following contentions are advanced by counsel in support of his claim that petitioner's conviction violated his constitutional rights:

1. The conviction was obtained by the use of a 1961 prior felony burglary conviction which was constitutionally invalid.

2. The identification testimony was tainted by constitutionally impermissible pre-trial identification procedure.

3. Counsel at trial was ineffective and incompetent.

The Court has reviewed the Petition, the Response, the Traverse and points and authorities cited by both parties. In connection with the 1970 conviction here attacked (for which he was sentenced in 1971 as mentioned above), case Number A007 490, the Court has also reviewed the following documents:

1. Unpublished opinion of the California State Court of Appeal.

2. Appellant's opening brief on appeal.

3. Respondent's opening brief on appeal.

4. Petition for rehearing in the State Court of Appeal.

5. Petition for hearing in the State Supreme Court.

6. Clerk's Transcript and Supplemental Transcript.

7. Reporter's Transcript and 2 Supplemental Reporter's Transcripts.

Additionally, the Court has studied the following records pertaining to the 1961 felony burglary conviction, Number 241-778 [1]:

8. Opinion of the State Court of Appeal reported as People v. Hernandez, 209 Cal.App.2d 33, 25 Cal.Rptr. 640 (1962).

9. Opening brief on appeal.

10. Respondent's brief on appeal.

11. Petition for hearing in the State Supreme Court.

12. Clerk's transcript and supplement.

13. Reporter's transcript and supplement.

The Court is, therefore, fully advised in the premises. Since there is no factual dispute, no evidentiary hearing is required and no recitation or findings of fact beyond those recited hereafter are necessary.

### THE PRIOR CONVICTION

Counsel for petitioner contends that the 1961 conviction was constitutionally invalid because defendant had been denied counsel in violation of the Sixth Amendment. In the 1970 trial this conviction was used to impeach petitioner when he testified, and was also used in the prosecutor's argument to the jury.

In the 1970 trial, A007 490, petitioner was arraigned on March 17, 1970. On June 17, 1970, an amended information

---

1. In that case Number 241-778, the prior felony conviction which has been attacked in connection with its use in the 1970 trial, the defendant (petitioner here) was convicted of violating Penal Code § 459 (burglary). The contention is made that the conviction was invalid because the defendant had been denied the assistance of counsel in violation of the Sixth Amendment.

was filed alleging the 1961 prior felony burglary conviction, which petitioner then denied. Objection was made and the trial court held a hearing on October 30 and again on November 4, 1970. At the conclusion of the hearings, the trial Judge ruled that the prior 1961 conviction was not constitutionally invalid, and petitioner then admitted it. The jury was instructed not to concern itself with the allegation previously read to them, and no objection is here made to the procedure followed.

The argument advanced is that the Court of Appeal erred in upholding the validity of the 1961 opinion as previously determined in the 1962 reported opinion, People v. Hernandez, *supra*. Counsel for petitioner contends that subsequent decisions require a reversal of the 1961 conviction.[2] He also appears to complain about the wording of the trial court's ruling on the prior, alleging that the court offered "no other reasons for his conclusions and made no Findings of Fact, nor any comment upon the credibility of the witnesses." (Pet. 10–11)

█ The petitioner must establish by convincing evidence that the factual determination by the state was erroneous, or that the state proceedings were not full and fair. Lurie v. Oberhauser, 431 F.2d 330 (9th Cir. 1970); Martinez v. Wilson, 357 F.2d 173 (9th Cir. 1966); Cancino v. Craven, 305 F.Supp. 539 (C. D.Cal.1970). This he has not done.

It is true that the Court did not make findings of fact as such, nor did the Court specifically pass on the credibility of witnesses at the time of the hearing on November 4, 1970. However, it is not accurate to say that the Court only relied upon the appellate ruling on the validity of the 1961 conviction, although the Judge did quote with approval from that opinion. Thereafter, he added:

"I do not feel that a defendant having the services of the public defender can then discharge the public defender, and say, 'Now appoint other private counsel for me.' I do not think Gideon v. Wainright [Wainwright] intends such a situation ever to come about. There was, apparently, within the meaning of People vs. Maddox, an intelligent waiver of counsel by Mr. Hernandez and, therefore, the prior os [sic] not constitutionally invalid." (R.T. 57)

Although the petitioner has not demonstrated to the satisfaction of this Court that the proceedings in the State at the 1970 trial were not full and fair, nevertheless the Court now reviews the facts surrounding the 1961 conviction and makes its own determination of its validity.

On April 7, 1961, Mr. Mead from the Public Defender's office was appointed to represent this petitioner. On May 19, 1961, when the case was called for trial, the petitioner insisted that the Public Defender be dismissed and requested a continuance for the appointment of private counsel to represent him. There was an extended colloquy during which the Court first refused all requests, but finally released the Public Defender and granted a continuance until May 24th. The entire proceedings are reported in the Reporter's Supplemental Transcript, p. 3, and appear verbatim in the margin.[3]

---

2. Counsel particularly stresses Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), decided six months after the opinion affirming the 1961 conviction in People v. Hernandez, 209 Cal.App.2d 33, 25 Cal.Rptr. 640 (1962). He also mentions Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) and Boyd v. Dutton, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755 (1972).

The latter two have no connection with the facts of this case and merit no further discussion.

3. Reporter's Supplemental Transcript, May 19, 1961, pp. 3–10:

MR. MEAD: Your Honor, I have talked to the defendant within the last twenty minutes. The defendant advises me, your Honor, that he does not desire the Public Defender's office to represent him. I think it's his intention, your

Honor, if the Court will not appoint an attorney for him, to represent himself, but he would like a continuance for that purpose.

THE COURT: The Court is not agreeable to a continuance, Mr. Hernandez. You have had plenty of time to get this case ready for trial and the witnesses are present. The Court strongly recommends that you have the benefit of an attorney. The Court cannot appoint another attorney for you. If you do not have money or property with which to employ—

THE DEFENDANT: Well, your Honor—

THE COURT: —to employ an attorney, why, the Court strongly recommends that you have your present attorney, in whom the Court has great confidence. I believe you have a very excellent attorney.

THE DEFENDANT: I have nothing against Mr. Mead, your Honor, it's just that I feel he is—the Public Defender's office is overburdened with cases. The man cannot properly represent me or devote his time.

THE COURT: He can represent you far better than you can represent yourself, the Court will assure you of that.

THE DEFENDANT: I would like the Court to appoint me an attorney.

THE COURT: The Court cannot do that. The Court does not have the authority to do that.

THE DEFENDANT: I have some notes here. 987, Penal Code, authorizes the Judge to appoint a private effective counsel under grounds of conflict of interests or any other reason.

THE COURT: Well, there is no conflict of interests and the Court just assures you now that he does not have the authority to appoint another counsel for you. That's why we have Public Defenders. When you are given the benefit of a Public Defender, the Court does not have the power to appoint anyone else for you. The Court strongly recommends that you—

THE DEFENDANT: I would like to dismiss the Public Defender under Section 284.

THE COURT: You may dismiss him if you like, but the Court advises you against it.

THE DEFENDANT: And I would also like to state that I am standing mute and I am not being represented by counsel, and also that I ask for a continuance in order—

THE COURT: The Court is going to deny a continuance, Mr. Hernandez. We are all ready for trial. You have had plenty of time to get prepared for trial and you are in custody and the Court does not want to put this over for a month or six weeks and leave you in custody without an attorney.

THE DEFENDANT: All right.

THE COURT: You still wish to represent yourself, do you?

THE DEFENDANT: I merely state that I wish a private attorney and I don't have the means and I do not wish to be represented by the Public Defender.

THE COURT: Well, the Court states he cannot give you a private attorney. The Court is not satisfied that the Public Defender should be relieved in this matter. The Court doesn't feel—have you ever had any legal training?

THE DEFENDANT: No, I haven't.

THE COURT: The Court doesn't feel that you are in a position to—

THE DEFENDANT: There are some aspects of this case which must be investigated, I feel, and an attorney—I mean, if we are to have a semblance of justice, I must have a prepared case and—

THE COURT: Do you have the funds with which to employ a private attorney?

THE DEFENDANT: I do not.

THE COURT: Well, the Court will not relieve the Public Defender.

MR. MEAD: May I make this statement, your Honor: From what I know of the case, the People's case, I don't think there would be more than probably one civilian witness and maybe one police officer. There are not a lot of witnesses in court on this case. . . .

THE COURT: Supposing you were granted a continuance, Mr. Hernandez, what would you do in the meantime to be better prepared for trial?

THE DEFENDANT: Well, I would try to get an attorney to take interest in the case.

THE COURT: Well, you say you don't have funds with which to do that.

THE DEFENDANT: That is correct, I have no funds, but feel that I am not being properly represented.

. . . . RECESS . . . .

THE COURT: Mr. Hernandez, the Court is reconsidering your motion to relieve the Public Defender and for a continuance. Now, if the Court continues this matter to next Wednesday, will that give you enough time to be prepared for trial with or without an attorney?

It is clear that petitioner was determined to proceed alone and rely on his interpretation of Penal Code § 987, insisting that he was entitled to appointment of private counsel, even though he was repeatedly told that this simply was not true. Although counsel for petitioner objects to the characterization of his procedure as "strategy" by the appellate court, it is nonetheless clear that the petitioner knew what he was doing and did make a considerable choice.

Perhaps the petitioner felt that the case was so hopeless—at least on the question of guilt or innocence—that there was nothing an attorney could do for him, and decided that his only chance was the hope that the jury would be sympathetic to him as a layman pitting himself against the awesome forces of the State. But that is pure conjecture; whatever his reasons, his conduct and statements made his intention clear, and he reinforced and adhered to the purpose he had expressed.

After the continuance, at the start of the trial in the jury's presence on May 24, 1961, the following appears:

"THE DEFENDANT: Your Honor, before we start I'd like to state my position in this case. I cannot act as my own attorney. I have no attorney,

THE DEFENDANT: You see, your Honor, the only reason for a continuance was that my original plea was to get a private attorney to represent me. I dismissed the Public Defender, however, that was denied and the continuance was in the hope of interesting a private attorney. However, I have no funds and I don't know any private attorneys, so I don't see—

THE COURT: What would you like to have the Court do?

THE DEFENDANT: Then I withdraw my asking for a continuance.

THE COURT: And you still, then, wish to proceed without an attorney, or do you wish the Public Defender to remain in to represent you?

THE DEFENDANT: I would proceed without an attorney since I have dismissed the Public Defender.

THE COURT: Well, the Court hasn't dismissed him so he's still of record, but if you wish to proceed without an attorney, while the Court strongly advises against it, as he did this morning, because the Court doubts very much that you are familiar enough with the proceedings and procedures and the defenses available to you and the matter of empaneling a jury, and so forth, doubts that you are personally skilled enough to well represent yourself, but if you yet want the Public Defender relieved and you want to proceed as your own attorney, the Court will permit you to do so and will relieve the Public Defender.

THE DEFENDANT: Let me state my position. I quite realize the importance of having an attorney, That is the purpose for my asking for a private attorney appointed by the Court, and I don't wish to proceed without counsel, however, my statement as to the dismissal of the Public Attorney still stands.

. . . (Hands him transcript and information)

THE COURT: Do you desire any continuance now, Mr. Hernandez?

THE DEFENDANT: I am without counsel now, is that correct?

THE COURT: That is correct, and the Court has no power to appoint anyone for you.

THE DEFENDANT: I understand, your Honor, by—

THE COURT: You have been talking to too many of these jailhouse lawyers, but the Court tells you as a matter of law the Court does not have the authority to appoint an attorney for you now other than the Public Defender, and he has done that and you relieved him.

THE DEFENDANT: May I just—No. 987 of the Penal Code authorizes the Judge to appoint private effective counsel—

THE COURT: You may.

THE DEFENDANT: —on a conflict of interests or any other reason.

THE COURT: You may employ private counsel. The Court is not denying you that right. If you can get private counsel, the Court would be very happy.

THE DEFENDANT: The Court may appoint private counsel.

THE COURT: The Court may appoint private counsel if he does not have a Public Defender, but we do have a Public Defender in this County and the Court appointed one for you, an excellent one, and it was your request to have him relieved and the Court has relieved him.

. . . Continued to May 24, 1961."

and for the sake of the court record, I repeat my request for effective counsel under 987a of the Penal Code authorizing the Court to appoint one.

"THE COURT: Well, the Court has explained all of that to you previously. We have gone all through that, Mr. Hernandez. You had a very competent attorney in the Court's opinion. The Court appointed him for you and you discharged him and said you wanted to represent yourself. The Court strongly advised against it and told you that in the Court's opinion you were making a very grave mistake, but you insisted upon it. The Court gave you a continuance to obtain other counsel or be prepared to proceed today in pro per, in your own person.

"MR. HERNANDEZ: I think if we go back to the transcript of the last proceeding here, I did not request to represent myself at any time.

"THE COURT: Well, the Court informed you that it was then up to you to obtain an attorney." (R.T. 3–4).

Throughout the trial when asked if he wanted to question witnesses he said, "I do, but I do not have a lawyer, your Honor." "I am not acting as my own counsel." "The California Constitution guarantees me the right to have counsel." The Court consistently readvised him, saying finally "You did. You had counsel. We gave you the guarantee and complied with it and appointed counsel for you, and your counsel was all ready for trial some time ago, and then you fired him and said you didn't want him and you would proceed without him. So that's the status of the case now." (R.T. 10–11)

Mr. Hernandez was not a naive and inexperienced young man who was not aware of his rights or the ramifications. His arrest record, which was relevant to his attitude, approach and statements was made known to the trial Judge outside the presence of the jury. Beginning in 1950, there were 5 arrests and dismissals of charges before a conviction

in 1954 for burglary and larceny. He apparently was paroled, for he was arrested again for investigation of burglary and jumped bail on May 20, 1955. A warrant was outstanding on that charge at the time of trial.

Continuing, he was arrested May 13, 1956, for burglary of a motor vehicle and charged with grand theft in Santa Monica. He again jumped bail and another hold was placed on him when he was arrested March 18, 1961. The report also shows Mr. Hernandez' true name to be Gilbert J. Craley, and he has been known and convicted under 5 aliases. (R.T.1961 pp. 55–58)

During proceedings on the 1961 charge, petitioner was also going through proceedings connected with the 1956 Santa Monica charge. Represented by the Public Defender, he was arraigned and entered a plea of guilty to a lesser charge of petty theft on May 29, 1961. It is, therefore, reasonable to assume that he knew his right to counsel when he discharged the Public Defender 10 days previously. (See footnote 3). It would appear from this chronology that petitioner was satisfied with the services of the Public Defender's office when an advantageous plea bargain was arranged, but decided to employ other tactics in this 1961 case when no such deal could be made.

As final evidence that this was a knowingly conceived plan, the petitioner said at the conclusion of the trial that he would make a few remarks to the jury, although he was not a lawyer and was not acting as a lawyer. His arguments and comments on the evidence cover more pages than that of the prosecuting attorney (R.T. 93–106). At the conclusion of the trial and at sentence he made a motion for a new trial, citing cases (R.T. 73, 122).

Although the Court feels that its finding on the validity of the 1961 conviction answers the objection raised here, there still remain a few arguments about the hearing on November 4, 1970, which will be clarified so that the cor-

rectness of the Judge's ruling will be even more apparent.

At that hearing, petitioner replied affirmatively when asked: "Did you at all times ask for an attorney to aid you or for legal counsel to aid you prior to asking or being offered the opportunity to cross-examine witnesses?" (R.T. 32). This affirmative reply is not borne out by the record. As previously pointed out, at the beginning of trial on May 24, 1961, and throughout the trial this petitioner made it clear that he was standing on his claimed right to have private counsel appointed, and did not ask for assistance, but for complete representation.

Again, on November 4, 1970, petitioner testified that he never told the Court in 1961 that he wouldn't accept the Public Defender. (R.T. 50). But at the proceedings on May 19, 1961, he said: "I merely state that I wish a private attorney and I don't have the means and I do not wish to have the Public Defender." (See n. 3, supra)

Finally, at the November 4, 1970, hearing, petitioner testified that he told the Judge the reason he wanted a private attorney was because the Public Defender wasn't prepared for trial and had seen him for only 5 or 6 minutes about 3 days before the trial began. The 1961 record shows that nothing was said about lack of preparation when he asked to have the Public Defender relieved. It was during a discussion in chambers towards the end of the prosecution case that the subject was brought up, and petitioner then made his claim that the office was too busy to be effective.[4]

This petitioner did not present any facts either in 1961 or at the hearing in the 1970 trial to indicate lack of preparation on the part of the Public Defender. He doesn't indicate that he ever had any discussion to that effect, nor has he shown any defense in the 1961 case which was neglected or omitted. At most, the record both times and in each case bespeaks merely a vague, general dissatisfaction or disagreement as was the situation in Kates v. Nelson, 435 F. 2d 1085 (9th Cir. 1970).

■ This Court recognizes, of course, that the Sixth Amendment right to as-

---

4. Reporter's Transcript May 24, 1961—pp. 59–60:

THE COURT: . . . If you recall, the Court has continuously urged you to accept the services of counsel.

MR. HERNANDEZ: I agree with you. That's exactly the motion I have made numerous times, requesting counsel. And—

THE COURT: The Court has told you, you have a perfect right to have one and you can get anybody you can get. The Court informed you previously that having appointed the Public Defender for you, the Court has no authority to appoint a private attorney for you.

MR. HERNANDEZ: Then you are saying that 987a is void in this case.

THE COURT: Under the facts of this matter so far, yes. The Court has complied with the Code section, has appointed a counsel for you.

MR. HERNANDEZ: I do not consider the Public Defender as effective counsel, your Honor.

THE COURT: Well, now, you are not the judge of that. The Court and the Government feels that he is.

MR. HERNANDEZ: Will the Court consider the grounds that the Public Defender has—I have been up there about nine weeks in the County Jail and the Public Defender has come down and talked to me briefly for about five minutes. However, the alarm bell rang which signals the dinner hour and he left before he could even discuss the case. He was back on another brief—another occasion for approximately ten minutes, and as far as that is—as far as, I mean, constituting a defense in a felony case, I can't buy it. He has an overload of I don't know how many cases, but every time I see him he's got a stack so high.

THE COURT: You will probably find that private counsel have very heavy overloads, also.

MR. HERNANDEZ: But at least he could devote time and effort to my case.

THE COURT: Well, there is no question but what the counsel the Court appointed for you would devote all the time that was necessary to give you every representation that you could possibly have.

sistance of counsel extends to state trials, and even to petty offenses where the loss of liberty is possible. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). We hold that in 1961 this petitioner was offered the assistance of counsel.

■ There is no constitutional right to counsel of one's own choosing. Reiff v. United States, 299 F.2d 366 (9th Cir. 1962), cert. denied 372 U.S. 937, 83 S.Ct. 884, 9 L.Ed.2d 768 (1963). It is equally true that while a defendant is guaranteed the right to assistance of counsel, the Constitution does not force an unwanted attorney on a defendant. Adams v. United States ex rel. McCann, 317 U. S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

Counsel for petitioner argues here that the Court in 1961 should have insisted on appointing another member of the Public Defender's office, but even this hind-sight assessment is an idle gesture. The proceedings make it abundantly clear that on May 19, 1961, this petitioner did not want anyone from that office, and indicated that his dissatisfaction was not directed against Mr. Mead [the Public Defender appointed] personally. (See footnote 3) In the light of his statements, he could not have been compelled to accept counsel against his will. Arellanes v. United States, 302 F.2d 603, 610 (9th Cir. 1962), cert. denied 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962).

This is not a case where a defendant and counsel had become embroiled in such irreconcilable conflict that there was no cooperation or communication as in Brown v. Craven, 424 F.2d 1166 (9th Cir. 1970). Note that in the *Brown* case the Court said: "Of course, a court is not required to provide an indigent accused with any particular attorney whom he may desire." *Id.* at 1170.

■ A judgment cannot be lightly set aside on collateral attack. The judg-

ment of a court carries with it a presumption of regularity. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel. Johnson v. Zerbst, 304 U.S. 458, 468–469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). It is noted that petitioner has never sought to attack the 1961 conviction directly by way of petition for writ of habeas corpus, but has chosen instead to attack it in this indirect manner through the 1970 conviction. The same standards will prevail, however.

It is argued that the conviction is invalid because it does not meet the classic statement about waiver being shown on the record, as set forth in Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), but that bald statement of a holding perverts the meaning of the case. A waiver is ordinarily "an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."[5]

Thus, although the abstract of judgment and clerk's record do not expressly recite a valid waiver, the record in toto of all proceedings show a clear and knowing and voluntary waiver by conduct based on the petitioner's background and experience as previously set forth.

In the 1961 trial, the Court cited as the law at that time People v. Duncan, 175 Cal.App.2d 372, 346 P.2d 521 (1959), holding that there were two choices in the matter of a court-appointed attorney: he can accept the representation by counsel, or he can elect to rep-

---

5. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 32 L.Ed. 1461 (1938).

resent himself. (R.T.1961 trial 61). The California test used in the unpublished opinion of the 1970 trial, in dealing with this point, cited People v. Addison, 256 Cal.App.2d 18, 63 Cal.Rptr. 626 (1967), (Op. p. 7), holding "A defendant who, with an intelligent conception of the consequences of his act, declines the aid of counsel prior to or at the commencement of his trial, is not entitled thereafter to interrupt and delay the hearing at any stage he deems advantageous merely to interpose a demand for legal assistance." *Id.* at 24, 63 Cal. Rptr. at 629.

That statement is in accord with the holdings of the Ninth Circuit Court of Appeals, which starts with the premise that there is no right to counsel of one's own choosing. Reiff v. United States, 299 F.2d 366 (9th Cir. 1962), cert. denied 372 U.S. 937, 83 S.Ct. 884, 9 L.Ed. 2d 768 (1963).

The instant petition is very similar to the situation in Kates v. Nelson, 435 F.2d 1085 (9th Cir. 1970). The petitioner here, as in *Kates* is in no position to complain that he is forced to proceed without counsel, a situation for which he is intentionally and knowingly responsible. In *Kates*, the defendant had stated unequivocally that he no longer wanted the services of counsel and that he would refuse to cooperate if counsel were allowed to continue. He attempted to excuse his conduct by insisting that the attorney was not handling his case properly, but this bespoke merely a simple disagreement. "While Appellant did not waive the entire California bar, he, knowing full well the nature of the charges against him and the enormity of the consequences if convicted, adamantly refused the further assistance of his appointed counsel, an able member of that bar." Kates v. Nelson, *supra,* 1089.

Counsel for petitioner further argues that the United States Supreme Court has concluded that the use of an invalid prior conviction to prove guilt or to impeach credibility is, without regard to impact, reversible error. He cites as authority for this claim Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). On the contrary, that case specifically held that in the circumstances of the case there was little room for a finding of harmless error. *Id.,* 483 n. 12, 92 S.Ct. 1014.

In the instant case, there was more than ample evidence to support the finding of guilt, and to discredit this petitioner's testimony by evidence other than that pertaining to the prior conviction. The victim of the robbery, whose testimony was unshakeable, identified the defendant positively. She said she looked at him from a distance of 12 to 14 inches (R.T. 66); she was positive of his face (R.T. 69). While she was awaiting emergency treatment she was shown several pictures but was unsure of the exact identification. She picked out 2 pictures (R.T. 155) who might be her assailant.

The following day, after treatment and rest, she gave a description of the robber (R.T. 143). She picked out a picture of this petitioner from a group presented to her (R.T. 156) and testified that she had a positive memory of his face (R.T. 85, 89). Finally, she pointed out the petitioner at the preliminary hearing with no prompting (R.T. 149–150). Another witness, Pierson, also identified the petitioner and gave a description very similar to that given by the victim (R.T. 184). [It is the testimony of this witness which has been challenged in ground 2 of this petition and will be more fully discussed later.] Additionally, two men, Martinez and Roberts, working nearby at the time of the robbery, saw a man running from the scene. He took off in a white car which they followed (R.T. 102). They obtained a license number which they gave to police (R.T. 105, 106), which proved to be that of a car registered to this petitioner. He was arrested at his

home when he drove up in that car later the same day.[6]

The defense was an alibi, petitioner attempting to show that he could not have committed the robbery, which apparently occurred about 2 P.M. (R.T. 62). A witness testified that she saw Hernandez in a bar across the street from his home about that time. He testified that he was in Hollywood on business and at his attorney's office about 4 or 4:30 P.M. (R.T. 427). Both he and his mother testified that he had loaned his car to a casual acquaintance, and that it was not returned until about 1:30 or 2 that day. He did not tell the police about this at any time (R.T. 481–482).

There was conflict about whether he told the arresting officer he had had the car with him all day. This he denied. Obviously, the jury simply did not believe his story[7] and this Court will not, of course, reweigh the evidence. Fernandez v. Klinger, 346 F.2d 210 (9th Cir. 1965), cert. denied 382 U.S. 895, 86 S.Ct. 191, 15 L.Ed.2d 152 (1965).

■ After a complete review of the transcripts and records of all proceedings in the trial court in both the 1961 and 1970 convictions, the Court concludes that the petitioner received a fair hearing with full opportunity to develop the material facts related to his claim, that the material facts were adequately developed, and that there is sufficient evidence in support of the California State trial and appellate court determinations that the 1961 prior conviction was not constitutionally invalid. See Jarvis v. Nelson, 464 F.2d 1299 (9th Cir.).

Additionally, the Court finds that if there were any error, in the light of the overwhelming evidence of guilt, it did not contribute to the verdict of guilty, and such error, if any, was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ Finally, mention must be made of United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), affirming Tucker v. United States, 431 F.2d 1292 (9th Cir. 1970). That case held, as the Court does here, that even though a prior invalid conviction had been used for impeachment, it was harmless error beyond a reasonable doubt, because the conviction played no part in the sentencing. In the 1970 robbery conviction the sentence imposed was within the bounds set by the California Legislature for violation of this Penal Code section 8[8] and the petitioner has not shown that the prior 1961 burglary conviction played any part in the sentencing.

## THE IDENTIFICATION

Counsel for petitioner contends that the in-court identification by witness Pierson was tainted by constitutionally unfair and overly suggestive pre-trial identification procedures (Pet. 13–14). He attacks the lineup as violative of constitutional requirements, pointing out that petitioner was the only person whose features were Mexican-American, and that none of the others whose pictures were in the group of mug shots was in the lineup (Pet. 39–40).

Since the petitioner was represented by counsel at the lineup, there was no

6. It is not disputed that Petitioner's car was used by the robber. The defense claimed that an acquaintance had borrowed the car the morning of the crime and had returned it later that day. Thus the contention was advanced that although the car may have been involved in the escape, petitioner was not.

7. It is noted that the actual trial, beginning with the empanelment of the jury,

took six days. The jury deliberated only one and one-half hours. (Clerk's transcript on appeal 2d Crim. 10809)

8. Penal Code § 213; Minutes of 1970 trial, Case No. AOO 490, January 12, 1971; Reporter's Transcript on Appeal, pp. 552–553; Clerk's Transcript on Appeal, p. 56.

violation of the "Wade-Gilbert" rule.[9] Nevertheless, the Court must determine whether the identification procedure was impermissibly suggestive, and then whether the procedure had such a tendency to give rise to a substantial likelihood of irreparable misidentification that the in-court identification must be excluded. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

The witness saw a man running from a distance of about 42 feet (R.T. 188) and identified the petitioner from having seen him that day (R.T. 178, 186). Shortly thereafter she gave a description to police (R.T. 184) describing him as a male Caucasian (R.T. 195–196). The next day she was shown five or six pictures and picked two which could possibly be the man she saw, but indicated that she would be more certain if she could see him in person, since that was only a picture (R.T. 185, 200).

The following day she attended a lineup of six persons who were all asked to speak and to walk back and forth. At her request, the six men were recalled and repeated the procedure. She had been seated in the front the first time, and went to the back and stood so that she could be more certain of the size (R.T. 203).

It was suggested that there was only one person with Mexican-American features in the lineup which made it unfair (Pet. p. 40), but at no time did the witness describe him as Mexican-American. She said that she would not know the nationality of the two whose pictures she picked out, nor of this petitioner (R.T. 200). It is not suggested that there were dissimilarities in height, weight or in any other respect. She merely was positive that he was the man she saw fleeing on the day of the robbery (R.T. 186).

■ There has been no showing that the lineup itself or the composition of the group of pictures was so unfair as to amount to a denial of due process. Foster v. California, 394 U.S. 440, 89 S. Ct. 1127, 22 L.Ed.2d 402 (1969). The witness had a clear view of the man she saw and there is no question but that the in-court identification had an independent origin. Riley v. Hocker, 441 F. 2d 552 (9th Cir. 1971); Plies v. United States, 431 F.2d 727 (9th Cir. 1970).

Finally, bearing in mind the considerations we are to apply to determine if any possible taint in the lineup has been purged,[10] the record reveals no discrepancy between the description given by the witness and the petitioner's actual physical description. She identified his picture, and never made a misidentification, nor failed to identify him. The lineup was held only one day after the offense, and there was an equally positive identification of this petitioner by the only other eyewitness, the victim. Clearly, this claim is without merit.

9. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

10. To see if a pre-trial identification was "impermissibly suggestive" or sufficiently purged of the primary taint, we must consider
   (1) the manner in which the pretrial identification was conducted;
   (2) the witness' prior opportunity to observe the alleged criminal act;
   (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification;
   (4) any previous identification by the witness of some other person;
   (5) any previous identification of the defendant himself;
   (6) failure to identify the defendant on a prior occasion; and
   (7) the lapse of time between the alleged act and the out-of-court identification.
United States v. Wade, 388 U.S. 218, 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

## COMPETENCY OF TRIAL COUNSEL

Counsel argues that trial counsel was so ineffective and incompetent that he reduced the proceedings to a farce and a sham, and deprived the petitioner of due process. He supports the contention by making several contentions:

1. Counsel's ignorance of law prevented a fair hearing on the prior conviction (R.T. 15). By originally denying it, he did not keep knowledge of the prior from the jury. Further, his lack of knowledge prevented the Judge from knowing pertinent facts which would have persuaded him of the invalidity of the prior.

2. Failure to challenge the identification procedures resulted in withdrawing a crucial defense (R.T. 20)

3. By testifying personally, counsel abandoned his client then and for the balance of the trial, including summation (R.T. 21)

4. Failure to prepare resulted in unavailability of crucial evidence (R.T. 23)

5. Failure to investigate the scene and interrogate his own witnesses impaired his ability to interrogate or cross-examine (R.T. 23)

6. Crucial defenses were withdrawn by his ignorance of the proper application of Miranda rights (R.T. 24)

█ The Court starts with the premise that counsel here in the habeas corpus matter must show that counsel at the trial was "so incompetent or inefficient as to make the trial a farce or a mockery of justice." Wright v. Craven, 412 F.2d 915, 917 (9th Cir. 1969); Dalrymple v. Wilson, 366 F.2d 183, 185 (9th Cir. 1966). Clearly, petitioner has failed to show such ineffectiveness that it would "shock[ing to] the conscience of the Court." Musgrove v. Eyman, 435 F.2d 1235 (9th Cir. 1971).

Most of the argument here is concerned with the proceedings concerning the validity of the prior conviction. Prior to trial, there had been numerous continuances and various hearings on a motion to suppress held in another Department of the California Superior Court. There was some confusion about whether there had actually been a hearing on the validity of the prior conviction, and it is true that petitioner's counsel at the time indicated his unfamiliarity with the exact procedure mandated for a "Coffey hearing." [11] However, a hearing was held, and counsel argued strenuously for the exclusion of the prior conviction.

Apparently he had been successful in some other case in having it declared invalid, for he attempted to convince both Judges involved in the 1970 trial that the matter of the invalidity of prior was res judicata. Thereafter, at the hearing he also attempted to urge the invalidity, pointing out that in 1961 there had been no inquiry of petitioner's competence to represent himself, and insisting that there has been no intention to waive counsel (R.T. 57). Contrary to the assertions in this petition, these facts were all brought to the attention of the State trial Judge in 1970.

Moreover, no harm was done by the fact that denial permitted the reading of the prior conviction to the jury, inasmuch as petitioner took the stand. It was then, of course, proper to use the fact of the prior conviction to impeach him as well as in argument by the prosecution. At any rate, there was extended discussion about the prior conviction, and the Court's previous holding about its validity also makes it clear that former counsel's attack or lack of it is no indication of ineffectiveness.

█ The same is true of the claim that counsel failed to attack the identification proceedings, here ruled to be valid. Failure to raise an issue which was unassailable is no proof of incompetence. See Zavala v. Craven, 433 F.2d 335 (9th Cir. 1970).

11. People v. Coffey, 67 Cal.2d 204, 60 Cal.Rptr. 457, 430 P.2d 15 (1967).

So far as the attorney himself testifying, the Court cannot see that this fact resulted in abandonment of petitioner for the balance of the trial, including the summation, as is claimed. It is true that there was no one by petitioner's side with whom he could consult during counsel's testimony, but although the record may show this to have been poor or careless trial tactics, it does not amount to plain or constitutional error. United States v. Cox, 439 F.2d 86 (9th Cir. 1971).

Next, it is said that counsel failed to interview or subpoena records early enough to prove petitioner's alibi that he was in a different part of the city at the time of the robbery. The witness in question testified that she recognized petitioner; he had been in three or four times to inquire about a claim and she particularly recalled a conversation the second time petitioner was there (R.T. 322). After six months, all records are stored in San Francisco.

Nothing in the testimony or otherwise presented to the Court indicates that if the file were produced it would have any notation about visits by petitioner or any other claimants. Apparently, she told petitioner that no payment could be made until a report or claim was filed by the insured, and no such claim had been filed at that time, whenever it was. Rather than being remiss, counsel seemed to be rather clever in creating an impression that the conversation took place on the day in question but could not be verified through no fault of his, but through the filing procedure involved.

Point 4 raises conclusory allegations that the credibility of the key witnesses was diminished as a result of lack of preparation by counsel. Although it is claimed that counsel's interview with witnesses was brief and recent, petitioner does not show how an earlier or more extended interview would have strengthened the credibility matter. Nor is there any basis for the claim that the attorney failed to visit the scene. On the contrary, counsel prepared and introduced diagrams into evidence (R.T. 114, 129) which he used to attempt to discredit several witnesses. He was expressly concerned with showing that the two witnesses, Martinez and Roberts, who saw and followed petitioner's car missed some very important facts. They could not identify the man running, and from their position they never actually saw that man enter the car they followed (which was admittedly the petitioner's).

Finally, there is no merit in the argument that counsel's unfamiliarity with Miranda resulted in withdrawing a crucial defense. Counsel did in fact try to keep out the testimony that petitioner had said he had the car with him all day but actually this was a matter of credibility. Petitioner denied having made the statement (R.T. 471), but later admitted it was possible he might have said it in a different connection (R.T. 480). In any event, even had there been a failure to object to the statement, that would not have been proof of counsel's incompetence. Hill v. Nelson, 423 F.2d 167 (9th Cir. 1970); Bates v. Wilson, 385 F.2d 771 (9th Cir. 1967).

It is interesting to note that petitioner made no objection to his attorney at trial or thereafter, although his contentions concerning the 1961 trial involved his belief that counsel was ineffective, as pointed out by respondent (Resp. p. 22). It is not enough that in afterlight it appears that some argument might have been made or position taken which might have produced different results. Kreiling v. Field, 431 F.2d 502 (9th Cir. 1970).

In short, counsel represented his client ably and vigorously as revealed by his cross-examination of witnesses, presentation of the alibi defense, various motions and strenuous arguments to the Court and to the jury. The Court finds that the petitioner did receive effective aid of counsel in the

preparation and trial of the case in accordance with the standards set forth in Brubaker v. Dickson, 310 F.2d 30, 37 (9th Cir. 1962).[12]

---

12. "This does not mean that trial counsel's every mistake in judgment, error in trial strategy, or misconception of law would deprive accused of a constitutional right. Due process does not require 'errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.' Determining whether the demands of due proc-ess were met in such a case as this requires a decision as to whether 'upon the whole course of the proceedings,' and in all the attending circumstances, there was a denial of fundamental fairness; it is inevitably a question of judgment and degree."
Brubaker v. Dickson, 310 F.2d at 37 (9th Cir. 1962).