**Ronald Eugene KIRBY, Petitioner,**

**v.**

**Charles L. WOLFF, Jr., Warden, Respondent.**

**Civ. No. 1832L.**

United States District Court,
D. Nebraska.

Oct. 12, 1973.

4. Reversal sub nom. Potomac News Co., etc. v. United States, 389 U.S. 47, 88 S.Ct. 233, 19 L.Ed.2d 46 (1967).

John Stevens Berry, Lincoln, Neb., for petitioner.

James J. Duggan, Asst. Atty. Gen., for the State of Nebraska.

## MEMORANDUM OPINION

DENNEY, District Judge.

This matter comes before the Court for decision upon an application for a writ of habeas corpus. Petitioner Kirby is currently incarcerated in the Nebraska Penal and Correctional Complex. The jurisdiction of this Court has been established pursuant to 28 U.S.C.A. §

2254. This opinion shall constitute the findings of fact and conclusions of law required of the Court by Rule 52 of the Federal Rules of Civil Procedure.

The Court has thoroughly reviewed the transcripts of the State trial and proceedings. A separate hearing has been conducted, during which additional evidence was received by the Court. The basic facts of the case are amply set out in the appellate decision of the Nebraska Supreme Court, State v. Kirby, 185 Neb. 240, 175 N.W.2d 87 [1970]. Briefly, the slain person was Gilbert Batten, who lived at the home of James Lynch in Omaha, Nebraska. Residing in that home were several unrelated adults and children. The killing occurred at approximately 3:00 A.M., on September 20, 1968. Throughout the preceding day, petitioner Kirby had visited the Lynch home several times, seeking to confront Lynch about Lynch's attentions to a girl friend of Kirby. During one of the visits, Kirby told Lynch to stay away from the girl friend and Lynch had said he would. During each of the visits, Kirby carried a .22 caliber rifle and during one of the visits fired it several times in front of the house. The slaying occurred in the basement of the home where Lynch was sleeping at the time of the early morning intrusion.

At the moment of the killing, Kirby had Batten kneeling in front of him. Kirby was holding the rifle in his left hand; it was loaded and had either a defective safety or the safety was off. Robert Walker, a companion of Kirby, was standing directly to Kirby's left and had Lynch kneeling in front of him. Walker was beating Lynch with the butt of Kirby's rifle, which had become detached. Walker either pushed or Kirby swung the rifle to the right, where it discharged. The bullet entered Batten's head on a slightly upward and to the right trajectory. These events were observed by Orval Hinz, the other companion of Kirby, who was standing at the steps leading up from the basement to the ground floor of the house. Following the shot, Kirby, Walker and Hinz

quickly fled the house. Kirby was later apprehended by local authorities and brought to trial. At trial, Kirby was called by the defense to testify. Kirby contended during his testimony that the killing was accidentally caused by Walker pushing the rifle. The jury returned a verdict of guilty as to first degree murder and a life sentence. Walker and Hinz pled guilty to manslaughter.

In this application, Kirby asserts numerous grounds for the issuance of the writ. All of these grounds were presented to the Nebraska Supreme Court. The Court finds no merit in any of those contentions, for the reasons set out by that Court in State v. Kirby, *supra*. Kirby has most vigorously asserted to this Court, and the Court will discuss individually, his allegations of ineffective counsel.

A member of the local Public Defender's Office was appointed to represent Kirby in the trial. It is that representation that Kirby asserts was ineffective. The Court has had the benefit of the testimony of that attorney at this Court's hearing. In the consideration of this issue, this Court is bound to apply the rule that:

> Habeas corpus relief on the ground of incompetency of counsel or denial of effective counsel will be granted "only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense or without adequate opportunity for conference and preparation." (Citations omitted). Scalf v. Bennett, 408 F.2d 325, 327–328 [8th Cir. 1969].

■ In this regard, petitioner asserts that his counsel only visited him once in jail prior to the trial, indicating inadequate pre-trial preparation. The short answer to this allegation is that the defendant refused to cooperate with counsel in the main and there was no indication that additional visits would be fruitful. There is no evidence that counsel did not adequately prepare under such handicapped circumstances. The Court cannot find that the representation of petitioner was without adequate opportunity for conference and preparation in this regard. United States ex rel. Marcelin v. Mancusi, 462 F.2d 36 [2nd Cir. 1972].

■ Petitioner also asserts that he had a valid psychiatric defense which counsel did not present. Appointed counsel testified that he did not consider that petitioner had such a valid defense. The only evidence in this regard is a psychiatric report rendered between the time of the commission of the crime and the trial and the psychiatric report rendered by this Court's appointed psychiatrist. The former report, although admittedly sketchy, showed no indication that any mental disorder of Kirby could rise to the level of a legal defense for insanity. The latter evaluation, although several years removed in time from the event, is in more detail and baldly concludes that there is a substantial probability that Kirby was not able to differentiate right from wrong at the time of the crime. Kirby's testimony at trial and his immediate flight from the scene of the crime render that conclusion simply incredible to this Court. Throughout his testimony, Kirby stuck to his story that the killing was accidental and in no way even hinted that at the time of the murder he believed it was the right thing to do. Kirby's later secretion of the murder weapon belies the fact that he thought he had been right in killing Batten. There was evidence that Kirby was a member of a notorious motorcycle gang and it is quite believable to this Court that Kirby was the sort of person who conducts his daily life in a wanton and reckless manner without regard for human life and, in fact, maims persons on occasions for the slightest provocations. However, the Court cannot find that as such Kirby had a valid psychiatric defense for any crime he might commit. On these facts, the Court cannot conclude that failure to present a psychiatric defense was failure

at all and, in any event, was not failure of constitutional magnitude. United States ex rel. Marcelin v. Mancusi, *supra*.

In connection with the psychiatric defense, petitioner also asserts that his counsel should have introduced evidence to show that he was intoxicated at the time of the crime and thus could not form the specific intent required for first degree murder. The Court is not so persuaded. The evidence as to intoxication was introduced at trial through Kirby's own testimony to the effect that he drank beer like a lot of people drink water or pop and that at the time of the crime he was not intoxicated.

Additionally, petitioner asserts that medical evidence available at this time shows that Kirby is partially blind in his right eye and therefore could not have seen the deceased before the killing. Petitioner contends in this regard that such evidence could have been obtained by counsel and presented at the trial and would have been so presented by an effective counsel. The Court is of the opinion that such evidence would have bolstered Kirby's version of the accidental nature of the killings. However, Kirby did testify that he was not looking at Batten prior to the discharge of the gun and that Walker pushed the barrel. The answer must be that the jury simply did not believe him and believed instead that he looked at Batten, perhaps because Batten started to move while Kirby's attention was diverted by Walker's beating of Lynch and in response fired the fatal shot. It is, therefore, doubtful that any medical testimony to the effect that Kirby was not looking at Batten just prior to the murder could have been decisive. The absence of the introduction of specific pieces of evidence alone does not ordinarily render the trial a farce or a mockery of justice, and the Court does not find that the absence of such medical testimony did so herein. *See* Hernandez v. Craven, 350 F.Supp. 929 [C.D.Calif.1972].

Finally, petitioner contends that an effective counsel would have called Walker and Hinz to testify in his behalf. In affidavits to this Court, those individuals corroborate Kirby's accidental version of the slaying. However, Hinz's affidavit supports appointed counsel's recollection that the reason Walker and Hinz were not called was because their own counsel had advised them not to testify and not because of oversight. Surely, appointed counsel could have done no more. In any event, trial tactics as to which witnesses to call do not amount to constitutional error, United States v. Cox, 439 F.2d 86 [9th Cir. 1971], and the Court so finds in this case.

For the foregoing reasons, an order denying the application for a writ of habeas corpus and dismissing the case will be entered contemporaneously herewith.